WALKER v. COLUMBIA & GREENVILLE R. R. COMPANY.

1. In action against a railroad company to recover damages for killing stock by a passing train, the plaintiff proved the fact of the killing and their value. *Held,* that defendant could not claim a non-suit.

2. The decision in *Danner* v. *South Carolina Railroad Company* (4 *Rich.*, 330), stated, affirmed, and approved; and held not to have been modified by statutory changes in the stock law.

3. The care required of railroad companies as against trespassers is not so great as in other cases; but if stock trespassing upon a railroad track are killed through the negligence of the company's agents, the railroad company are liable for damages.

4. The decision of the Circuit Judge on a motion for new trial, that the preponderance of the evidence is not opposed to the verdict, is final and cannot be reviewed on appeal.

5. Defendant's witnesses having testified that the stock killed could not have been seen within the distance necessary for stopping the train, the plaintiff was properly permitted to introduce testimony upon these points in reply, and defendant could not reply to such testimony.

Before KERSHAW, J., Richland, July, 1885.

This was an action by J. F. Walker against the Columbia & Greenville Railroad Company, commenced in January, 1885, to recover damages for three mules and two colts, alleged to have been negligently killed by a freight train of the defendant on December 26, 1884. The plaintiff proved the killing of the stock on the railroad track and their value, and that at the place where killed, the railroad ran through a pasture used by plaintiff and an adjoining land owner. Defendant then moved for a non-suit, which was refused.

The character of the testimony for the defence and other matters are stated in the opinion of this court. The jury found a verdict for $881.30 in favor of plaintiff, the amount claimed with interest to date of verdict. Defendant gave notice of motion for new trial on the minutes, whereupon plaintiff's attorney entered an order remitting the interest, leaving the judgment for $850. The motion for new trial was then refused, the judge saying : "There was some evidence to sustain the jury if they believed it. It conflicted with Duren's statement, but they had the right to take the one and reject the other, and I cannot, whatever would have been my deduction from the testimony, invade their province and set up my opinion on a question of fact against their's. Moreover, the jury were given an opportunity of investigating the matter of distances and possible length of view on the road at that point by an inspection of the *locus in quo*. They were not misled by the charge of the presiding judge, and the new trial is refused."

The defendant appealed upon the following exceptions :

I. Because his honor erred in refusing the defendant's motion for a non-suit in said cause.

II.   Because his honor erred in refusing to allow defendant to rebut plaintiff's evidence as to the date and locality at which stock had been killed on former occasions near the scene of the killing, which is the cause of the present action,. on the ground that it was plaintiffs evidence in reply, when in. fact it was new matter.

III.   Because his honor erred in refusing to allow defendant to rebut and reply to plaintiff's evidence as to stopping of trains and the distance in which they were stopped, on the ground that it was in reply, whereas it was new matter, which the defendant had a right to reply to, and his honor should have so held.

IV.   Because his honor erred in instructing the jury that they could find in addition to what they believed the value of the stock killed, the interest upon said value from the date of the killing to the date of the verdict.

V.   Because his honor erred in admitting plaintiff's evidence in reply, which evidence was not properly in reply, but was in fact matter only admissible in chief.

VI.   Because his honor erred in refusing to set aside the verdict as found by the jury, and to grant a new trial.

*Mr. John C. Haskell,* for appellant.

*Messrs. F. W. McMaster* and *Andrew Crawford,* contra.

June 25, 1886.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON : The plaintiff recovered a verdict against the defendant for $850, the value of three mules and two colts killed on the track of defendant's railroad in Richland County.   The defendant appealed, assigning error to the presiding judge, in substance as follows : 1. That he erred in refusing defendant's motion for non-suit.   2. That he erred in refusing. defendant's motion for a new trial.   3. That he erred in permitting the plaintiff to introduce new matter in reply to defendant's testimony.   And 4. That he erred in refusing to permit the defendant to reply to the new matter introduced by the plaintiff, in his reply to defendant's testimony.

First, as to the non-suit.   The plaintiff was introduced as a

witness, who proved the killing with some other facts, and closed, when the defendant moved for a non-suit. This motion was refused, and we cannot see how the Circuit Judge, under *Danner's* case, and several cases since that case, could have done otherwise than refuse it. With these cases before the judge, instead of its being error on his part to refuse the non-suit, would it not have been legal error to have granted it ?

The appellant, in his argument, however, contends first, that the rule in *Danner's* case had its foundation in the stock law, then of force, which law having since been materially and radically changed, the rule which rested upon it must also change into some new rule in harmony with the new stock law ; that the foundation of the old rule having fallen, the rule resting upon it must fall also. This argument would have much force if it were true that *Danner's* case rested upon the foundation suggested. But did it so rest ? We had occasion in the recent case of *Jones* v. this same defendant (20 *S. C..* 254), to look into and examine this question, and we then came to the conclusion that the rule in question was established upon the principle that the facts and circumstances of the killing, upon which the issue of negligence in cases of this kind must be determined, being in most such cases entirely within the knowledge of the party committing the injury, it was right and proper that said party should be required to explain and exculpate.

The court said in *Danner's* case, "That the company did not produce witnesses to show how the damage occurred, nor explain why they omitted to do so, tends to induce the belief that they could make no defence. They had the witnesses under their control. The plaintiff may not have been present when the cattle were killed, and may not be able to discover who were the persons employed on the train when the damage was done. When a party is charged with an act or declaration which may subject him to an action, and does not deny it, his silence is construed into an admission. The same construction may be put on a party's omission to offer testimony in his defence when it is in his power to produce witnesses who might exculpate him." Besides, as we said in *Jones's* case, *supra*, there is not a word, or an intimation in *Danner's* case, from beginning to end, involving

the stock law then existing, as being an element in the decision establishing the rule.   On the contrary, it was established upon principle and authority—several cases being cited and relied upon, these cases having no reference whatever to the then stock law.

It is true, in the subsequent case of *Murray* v. *R. R. Co.* (10 *Rich.*, 232), the court did make some reference to the fact that cattle under the law could roam at large, and, therefore, that where the owner permitted them so to do, he was not guilty of legal negligence such as would embarrass his recovery from a person who, through negligence, hurt his cattle, thereby implying that if cattle were not allowed to roam at large, there might be greater difficulty presented to a recovery, when injured, than as the law then stood, but not that such a fact should require a different rule as to the effect of proof of killing.   There is no intimation of that sort, and Judge Wardlaw, in delivering the opinion in *Murray's* case, follows what is said above with this : "The court acquiesces, too, in the reference which the recorder made to *Danner's* case for the presumption which arises from the killing of the horse by a train of cars established and unexplained, and for the unfavorable inference raised by the absence of all the defendant's agents who were at the killing.   Negligence, rather than accident, is shown by proof of damages done by a train of cars when nothing more appears."

Our conclusion in *Jones's* case, *supra*, was : That the rule in *Danner's* case not having been established originally on the foundation of the stock law as then existed, it stood unaffected by the recent statutes requiring stock to be kept enclosed, and we see no reason for a departure from this conclusion.   See *Jones* v. *C. & G. R. R. Co.* (20 *S. C.*, 254).

As we have said before in one or more of the cases on this subject, the rule in *Danner's* case does not create any greater liability than existed before, nor does it dispense with negligence as a necessary element in liability.   Nor does it increase or enlarge the care or modify it in any way previously required, so as to disprove negligence.   It simply determines the force and effect of a proved fact.   It says that the fact of killing being proved, then there is a *prima facie* case of negligence, and this

presumption arises in every case where cattle are killed by a railroad, whether they are trespassing or not, for the reason that even as to trespassing cattle it is not impossible that the killing may in some cases result from negligence. True, in the latter class of cases it would be much easier for the railroad company to disprove negligence than in the former, as the care required as against trespassers is not so great as in the other class. While, however, the law does not hold railroad companies to such strict accountability for injuries done to trespassers, as will be enforced when an injury is done to one not a trespasser, yet these companies cannot claim exemption upon the ground, simply, that the party injured was trespassing. It is possible that a trespasser even may be injured from negligence.

The rule in *Danner's* case does not interfere with the principles above stated. It does not make railroads liable where they were not liable before. It does not enlarge the degree of care required to exempt them from responsibility. It only goes to the extent of declaring, that the fact of killing, or injury done, presumes negligence, *prima facie*, and it then leaves the defendant with the burden of overthrowing this presumption, by such proof as the circumstance in the special case may enable him to do. If it be a case arising out of the trespass of the plaintiff, this is matter of defence, and may be set up as limiting the degree of care required to be proved in order to overthrow the presumption; or, on the other hand, if it be not a case of trespass, then the proof of greater care would be required to remove the presumption. Now, in all these cases, the party doing the injury is especially presumed to have information as to all the facts and circumstances attending it, and there is no hardship in requiring him to bring these facts and circumstances forward to his exculpation, if they exist, and upon failure to do so that he shall be presumed to have committed the injury, which has been traced to his hands, through negligence.

Nor do we agree with the appellant, that this principle discriminates against persons as compared with cattle, placing a higher estimation upon cattle than upon human beings. On the contrary, the tendency of the principle is directly towards the safety of passengers, and the protection of the lives of those who

travel on railroads. It is in their interest. Railroad cars are, perhaps, as frequently endangered and thrown from the track by running over cattle as from any other cause. Would the over-ruling of the rule in *Danner's* case or the relaxing of it, have a tendency to lessen the number of these occurrences? Would the fact that killing stock raises no presumption of negligence, make those who run trains more watchful? Would the knowledge that railroad companies could not be made liable except upon affirmative evidence of facts and circumstances showing positive negligence, when it is well understood that in most of such cases the plaintiff is utterly unable to prove anything more than the injury, knowing nothing of the attending facts or circumstances, increase the vigilance of railroad employees, &c.? Care, close and constant care, in the interest of safety to passensers and to the protection of the lives of those who are on board, is at all times needed at the hands of those who run railroad trains; and if a change of the rule under discussion would increase this care, there would be reason for the change. But does not the rule, as established, afford a stronger motive to the exercise of care than would be the case without it? It certainly does not weaken incentive to care; on the contrary, we think it strengthens and adds greatly to such incentive.

We see no sufficient reason for overruling this rule, on any of the grounds urged by appellant. It may be, that it is not in harmony with all of the American railroad decisions on this subject. It is true, perhaps, that some of the other States have held differently, but with us it has been established long since. It has been affirmed and re-affirmed, and standing as it does, not only upon the authority of these several decisions, but upon sound and correct principles, it should not be disturbed.

Next, as to the new trial. This involves questions of fact, and is, therefore, beyond our cognizance. The judge held that the preponderance of the evidence was not opposed to the verdict, and his judgment is final.

The other grounds involve an inquiry, whether the Circuit Judge admitted evidence of new matter by the plaintiff in reply, as alleged, to defendant's testimony in defence, and also whether he refused to permit the defendant to reply to new matter thus

introduced. In other words, whether the evidence admitted and objected to was new matter, such as the defendant should have been allowed to reply to.

The defence rested very materially upon evidence that the runner in charge of the engine, did not see, nor could have seen, the mules and colts, at a point sufficiently far from the place where they were killed to have stopped the train in time to prevent the accident. In this way the defendant undertook to disprove negligence, and to overthrow the presumption arising from the killing, the defendant relying upon two facts: First, the distance between the point where the runner saw the animals, or could have seen them, and the point where they were killed; and, 2nd, the impossibility of stopping the train between these two points. Now, it cannot be denied, that upon the close of defendant's evidence, the plaintiff was entitled to rebut by counter evidence defendant's testimony on these points. Nor can it be denied, that if such testimony is confined to such rebuttal, that the defendant is without the right of reply. See 2 *Phil. Evid.*, *Pt.* 1 (*C. & H.* notes), 712–715.

We have examined the testimony reported and found in the "Case" at the several folios where objection was made, and have found that said testimony was in rebuttal of defendant's witness on some one of the facts testified to by him, to wit: either as to the point where the animals mounted the track, as to the distance they could be seen, or as to possibility of stopping the train within the distance from the point of vision to the point of killing. As far as we have been able to discover, defendant's objections were made at folios 120, 122, 127, 128, and at folios 162, 163. Without prolonging this opinion by stating the questions and answers, we say that the Circuit Judge is sustained in his rulings therein by the law of evidence, as administered in this country. See the early case of *Scott* v. *Woodward*, 2 *McCord*, 161; 3 *Wait Prac.*, 124, 125. Besides, these matters should be left very much to the discretion of the trial judge. 3 *Wait Prac.*, 124.

The interest embraced in the verdict having been remitted, the question as to that matter is eliminated.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.