## JOYNER v. SOUTH CAROLINA RAILWAY COMPANY.

1. The general principles of law applicable to cases involving the negligent killing of stock by railroad trains, and the rules of evidence applicable thereto, considered.

2. Where the plaintiff proves the fact of the killing of his stock by a moving train of cars, he thereby raises a legal disputable presumption of negligence on the part of the railroad company, which presumption

is not affected by the mere introduction of evidence on the part of the company, unless such evidence is sufficient to rebut this presumption by making out affirmatively a case of accident.

3. Plaintiff having proved ownership, value, and the fact of killing, a motion for non-suit was properly refused.

4. The plaintiff is not bound to prove the absence of contributory negligence; this is a matter of defence to be established by the defendant.

5. The character of a railroad company's right to its track, and whether stock on the road are trespassing, depend upon the deed or other instrument under which the right of way was acquired.

6. The trial judge committed no error in charging "that if the train was running at a lawful rate, and had the customary appliances and force of train-men, and the stock when seen by the engineer, or might with due care have been seen, was so close that the train could not be stopped in time to avoid striking it, then the plaintiff cannot recover."

7. Much less care is required of railroad companies in providing against stock on its track since the passage of the stock law than before its passage.

8. Where the law requires a railroad company to provide its trains with a certain number of brakes and brakemen, it will be presumed, in the absence of testimony, that the company had complied with this requirement.

9. A statute providing for certain accompaniments to passenger trains and to freight trains does not apply to mixed trains.

10. The killing being proved, the law presumes negligence until the contrary is shown, and this rule of law is unaffected by the recent statutes requiring stock to be kept enclosed.

11. An unintentional injury may be the result of negligence.
MR. JUSTICE MCIVER *dissenting* in part.


Before KERSHAW, J., Richland, July, 1885.


This was an action by Marie C. Joyner against the South Carolina Railway Company to recover the value of two mules belonging to plaintiff, which were killed by a mixed train of the defendant company on its track on the evening of November 17, 1884. The plaintiff proved the value and ownership of the mules, and the fact of killing. Defendant moved for a non-suit, which was refused, and then introduced the testimony of the engineer and conductor of the train as to the circumstances of the killing. It also appeared in evidence that these mules were not in any pasture enclosure when killed.

The charge and refusals to charge of the presiding judge are

stated in the exceptions, which appear in the opinion of the court. The verdict was for defendant, and plaintiff appealed.

*Mr. Allen J. Green*, for appellant.

*Mr. John C. Haskell*, contra.

January 4, 1887.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The action below was brought to recover the value of two mules alleged to have been killed by a train of the defendant.   The case was heard before Judge Kershaw and a jury in July, 1885, the defendant obtaining the verdict.   Both sides have appealed—the defendant because his honor the presiding judge, refused a motion for a non-suit, made at the close of the plaintiff's testimony;   the plaintiff on several exceptions alleging error in the charge and in certain refusals to charge. Before stating our conclusions as to these various grounds of appeal, we deem it proper to notice first some of the general principles of law applicable to cases like the one at bar, as we understand them, which we will do in as few words as clearness and distinctness will admit of.

The gist of all such actions is negligence, which must be proved by the plaintiff to the satisfaction of the jury, under the established rules, before a recovery can be claimed.   Now, what is negligence?   Negligence, as held in many cases and as laid down by all text-writers upon the subject, is defined to be the absence of due care.   What is due care?   Due care is a relative term, each case having its own requirements in that respect;   or, in other words, each subject-matter under the control and management of a person having its own demands as to due care.   Consequently, what would be due care as to one matter, would not necessarily be so as to another.   On this account it has been impossible for the law to establish any precise standard or legal definition of due care suited to every case, and which the trial judge should deliver to the jury as matter of law, to be compared by them with the evidence, so as to reach a satisfactory conclusion on the question whether or not due care is absent or present in a special case.   All, therefore, that the law has determined as a

general rule, and all that the judge in charging upon this subject need say, is that the presence of due care negatives negligence, and that the absence of such care constitutes negligence, or, rather, affirms its presence, the jury being left to determine for themselves what due care requires, which in most cases, and especially in all matters of common concern, they are supposed to know, having a standard in their own minds with which they can compare and consider the testimony. In other cases outside of the ordinary concerns of life, and even in any case we suppose, if thought advisable, the testimony of experts or of others well informed upon the subject might be offered by either party to show what due care required in the special matter before the court, and for the information and guidance of the jury.

Now, as negligence, which, as we have seen, is the absence of due care, is the gist of actions like the one below, in order to recover in such actions, the absence of due care must be proved by the plaintiff. How is it to be proved? It may be proved by showing the existence of facts and circumstances which could not have occurred if due care had been present or had been exercised, and if such proof is introduced by the plaintiff, his case is made out, unless counter-testimony sufficiently strong to overthrow the plaintiff's evidence is introduced by the defendant. And we may say that this is the general, and perhaps the most satisfactory, way of proving negligence, to wit, by the proof of facts and circumstances of a character which could not have existed if that due care had been exercised which, in the opinion of the jury, founded upon their own knowledge or evidence, as the case might be, the matter in hand required. While this is the general way, yet can it be said that this is the only way in this State?

This brings us to *Danner's Case* (4 *Rich.*, 330), which of late has become so prominent. We do not propose to discuss this case, or to examine again into its basis or foundation, with the view to test its correctness. It was decided in 1851, and it has been followed and affirmed in several cases since, after full consideration of the principles upon which it was originally based—some of these cases reaching down to a very recent date, due regard being had in their adjudication to the recent acts known as the "stock law." Under these circumstances we must regard

the rule laid down therein as the settled law of South Carolina, at least as long as these cases stand unoverruled. What is the rule in *Danner's Case?* Briefly, that case decided that, in cases like that before the court, evidence by the plaintiff that his cattle had been killed by a railroad train, proved by legal inference the absence of due care, in other words, the presence of negligence— at least so far as to allow the plaintiff to rest and to await the defendant's testimony, the plaintiff being entitled to recover unless the defendant's testimony removed or overthrew the *prima facies* thus made out by the plaintiff. It was a judicial determination of the effect which such testimony offered by the plaintiff should have in all such cases, and it was established from the necessity of the case.

To state the rule and its effect somewhat more distinctly, we may say, that while, as a general rule, the plaintiff, in order to establish negligence which he has charged and which is the gist of his action, should prove the existence of facts and circumstances, if within his power, sufficient to exclude the idea of due care, yet in cases like that below, Danner's case has established the principle (which may be regarded as an exception to the general rule), that proof of the single fact of the killing of plaintiff's cattle shall have the effect in the first instance of the proof of all the facts necessary to show negligence—the court in that case determining not that the plaintiff could recover without proving negligence, or that it was the duty of the defendant to disprove it in advance of the plaintiff proving it, but that the plaintiff's evidence was sufficient *prima facie* to establish it.

If this be the true meaning of the rule in Danner's case (and of this there can be no doubt), then it must be conceded that when a case is brought under that rule by the required evidence, negligence at once attaches to the defendant by presumption of law. The question now arises, how long is this *prima facie* presumption to remain, and to what extent is it to go? Suppose the defendant in reply introduces testimony purporting to show the attendant facts and circumstances, does the presumption still remain of force, until it is determined by the jury that these facts and circumstances have overthrown it by establishing the presence of due care, or does it cease *ipso facto* by the introduction of such

testimony, leaving, then, the question of negligence to depend upon the force and effect of such testimony, unaffected by such presumption? In other words, will the introduction of such testimony by the defendant expunge the presumption, leaving the case to stand upon the circumstances thus brought to light, with the *onus* on the plaintiff to prove negligence therefrom, as in ordinary cases?

We think that when once this presumption is established, it remains of controlling force until the defendant's evidence overthrows it by showing either due care, unavoidable accident, or something of that kind, the burden to show which, the *prima facie* case of the plaintiff, by operation of the rule in Danner's case, has thrown upon the defendant. We think so, for several reasons. In the first place, the adverse doctrine would completely emasculate and fritter away the rule. It would, in effect, overrule by implication Danner's case, and all of the subsequent cases on the same line, in face of the fact that we have expressly declined to interfere with said rule. True, when all the attendant facts are brought forward, they will show, necessarily, either negligence or the absence of it, and in such case the presumption cannot be of much importance; but who is to say whether or not all the facts are brought to light in a given case? The doctrine against which we are contending is that the rule in Danner's case applies only to cases where the defendant introduces no evidence—makes default; and that where he introduces testimony in his defence, whether such testimony exculpates him or not, yet at that moment and by that means the presumption is expunged and the rule avoided, leaving the case to be decided by the facts as presented, regardless of the presumption.

If this were the rule, how easy it would be for the defendant in every case to escape liability. In most of these cases the defendant alone knows all the facts. He knows the favorable as well as the unfavorable circumstances, and if he can remove the presumption, which is all that is against him at the close of the plaintiff's testimony, by simply entering upon his defence, whether he makes a full or only a partial disclosure or not, of course he will stop short of inculpation. And who can say that he has stopped short? Besides, if he can expunge the presumption by

simply offering testimony of such facts as he may choose to present, claiming them to be all the facts, he would have the power to determine the facts upon which the case would have to be tried, with the opportunity and inducement of excluding all such facts as might tend to inculpate him, thus leaving the rule in Danner's case inert and lifeless, though still standing in our decisions as established law.

In the next place, while it is admitted that the presumption in question is not a conclusive presumption, yet we think it is a presumption belonging to that class known in the law as disputable, and in our opinion it is governed by the rule which has been established as applicable to such presumptions. Now, what is that rule? In *Rapalje & Lawrence Law Dictionary, title* "Presumption," we find the following: "Presumptions of this kind [disputable] are inferences which the law requires to be drawn from given facts and which are conclusive until disproved by evidence to the contrary. Thus, an infant between seven and fourteen is considered incapable of committing a felony, but evidence may be given to prove a felonious intent." Or, as Mr. Greenleaf expresses it: "The rule in this class of presumptions [disputable] has been adopted by common consent from motives of public policy and for the protection of the general good, yet not as in the former class [conclusive] forbidding all further evidence, but only excusing or dispensing with it till more proof is given on the other side to rebut the presumption thus raised. * * * This legal presumption is to be regarded by the jury in every case as matter of evidence, to the benefit of which the party is entitled." 1 *Greenl. Evid.*, § 34.

So that the presumption in these cases being a legal one, drawn by the law, can be removed in no other way than by evidence sufficiently strong to rebut it. When the defendant offers no evidence, it becomes conclusive; when the defendant offers evidence which not only fails to explain, but in itself shows negligence, of course the plaintiff will prevail. But if defendant's evidence overthrows the *prima facies* and makes out affirmatively a case of accident, the presumption is gone and the plaintiff must fail. Suppose, however, the evidence of defendant proves nothing, neither negligence nor the want of it, can it be said that the mere

offering of that evidence will remove the *prima facies* and shift the burden of proof, making it necessary for the plaintiff at his peril to show negligence by affirmative proof? We cannot think so. On the contrary, we think the proper understanding of the rule in Danner's case, as in all other cases of legal disputable presumptions, is that it remains until the explanation offered is strong enough to rebut it by making out affirmatively a case of accident.

The opposite interpretation, which limits the *prima facies* to cases where the defendant offers no evidence, is based upon the view that the presumption upon which the *prima facies* rests is only raised by the single fact of the defendant offering no testimony, and, therefore, when evidence is offered, there is no presumption, according to the maxim, *cessante ratione cessat ipsa lex.* If this assumption was true, there would be much force in the argument. But we do not agree to this interpretation. It is true that in some of the cases the circumstance of the defendant offering no proof is adverted to by way of justifying the application of the rule in such cases. But we think a careful reading of the cases will show that it was not the absence of testimony simply from the defendant which required the rule, but it was the absence of exculpating testimony, which, if it existed, the defendant alone had the power to produce, as it was not supposed that the plaintiff could know the facts, these occurrences frequently taking place in the night time and in unfrequented places, when no one is present except the employees of the road, the necessity of the case, therefore, requiring the rule.

That we thus understood and interpreted the rule, when the recent case of *Jones* v. *C. & G. R. R. Co.* (20 *Shand*, 258) was decided, appears from the following language used therein, to wit: "The rule in Danner's case required the judge to say when the killing was proved, that the plaintiff might rest, and if the defendant failed to explain this killing so as to exculpate the company either by proof that the killing was accidental, unavoidable, or free from negligence, then the fact of killing with the *prima facie* case which it made was sufficient, as this furnished all the proof which the case in the first instance required." Nor was this in any way modified in the recent case of *Fuller* v. *P. R. & A. R. R. Co.*, 24 *S. C.*, 132. In that case we said: "If

the judge had been requested to charge that upon the defendant introducing evidence to explain the killing, that then, whether the presumption of negligence arising from plaintiff's proof of ownership and the killing was overthrown, would depend upon the preponderance of the evidence, and the judge had declined to so charge, the appeal would be sustained;" showing clearly that we regarded the presumption of force until it was overthrown by the preponderance of the evidence; that having once been raised under Danner's rule, it remained until removed by counter-proof overthrowing it, which would depend upon the preponderance. And this, it seems to us, is in exact accordance with the law laid down by our old court in *Zemp* v. *Railroad Co.* (9 *Rich.*, 84), Judge Wardlaw delivering the opinion, in which he said: "I agree entirely to the principle extracted from the case of *Hyeman* v. *The Western R. R. Co.* (16 *Barb.*, 353), that 'when a party (passenger) is injured on a railroad, there is, from that fact alone, *prima facie* evidence of neglect in the management of the road, which evidence defendant is bound to rebut. If this be the rule, and I am sure of it, how would this case, tested by it, stand?' The injury is abundantly shown, and the *prima facie* case thus plainly made out." In that case much evidence was offered by the defendant, but the *prima facies* was not rebutted. True, that was a case of a passenger injured, but upon the point of removing the *prima facies*, we do not see how it can be distinguished from a case of cattle killed or injured, the underlying principle being the same in both cases.

Now, let the exceptions be tested by the principles above. And, first, as to the motion of non-suit made by the defendant. The judge refused this under the rule in Danner's case, the plaintiff having closed her case on proof of the killing and the ownership of the mules in question. There certainly was no error in this, as it cannot be contended that Danner's case was not in point.

The plaintiff's first exception is, that his honor erred in charging the jury that "To entitle plaintiff to recover, there must be evidence that the stock was killed by reason of the negligence of the defendant, and that the plaintiff in no manner contributed directly to the injury." Understanding this charge to mean that, before plaintiff could recover, she was bound not only to establish

negligence on the part of defendant, but also to prove the absence of contributory negligence on her own part, we think the charge as to the latter portion was error. It was in conflict with the cases of *Carter* v. *C. & G. R. R. Co.*, 19 *S. C.*, 20; *Couch* v. *Railroad Co.*, 21 *Id.*, 495, and also with the general doctrine, that contributory negligence is a matter of defence which to avail the defendant must be made out by him.

Second. "That the defendant has the exclusive right to its track and right of way, and if the stock was on it without the permission of the defendant, it was trespassing." The character of defendant's right to its track and right of way, and, as an incident thereto, whether the stock was trespassing, would depend upon the deed or other conveyance under which the defendant was using the same. It would be a matter of construction, and as no deed or conveyance appears in the "Case," we have no means of determining whether this exception is well taken or not.

Third. That his honor erred in charging, "That if the train was running at a lawful rate, and had the customary appliances and the customary force of trainmen, and the stock when seen by the engineer, or might with due care have been seen, was so close that the train could not be stopped in time to avoid striking it, then the plaintiff cannot recover." In this his honor charges as matter of law, that the facts mentioned would show the presence of due care, thereby negativing negligence. We do not think this was error, because, while it is true, as we have said above, that as a general rule what constitutes due care, as well whether it is absent or present, must be left to the jury as a mixed question of law and fact, and while, also, the law having given no better definition of negligence than that it is the absence of due care, the judge would meet his duty in saying that much and no more, yet we do not think it would be legal error for a Circuit Judge to state to the jury in a like case that certain facts, if proved, would negative negligence, as was done by his honor below in the language of this exception. It is, therefore, overruled.

Fourth. That his honor erred in charging, "That much less care is required of railroad companies in providing against stock on its track since the passage of the stock law than before its passage." We think this was in accordance with the recent cases of

*Jones* v. *Railroad Company, Simkins* v. *Railroad Company,* and other cases, and therefore not error.

Fifth. That his honor erred in charging, "That if the stock was on the track without permission, plaintiff cannot recover unless there was evidence to satisfy the jury that defendant might have avoided the accident by the use of ordinary care and prudence." This, if it be the law, would practically abrogate the rule in Danner's case. It is not to be supposed that stock has ever been, or ever will be, on a railroad track by the "permission" of the company. No doubt, in every case, when on the track, they are there without "permission." So that such a rule would require the plaintiff in every case to satisfy the jury that defendant might have avoided the accident by the use of ordinary care and prudence. We think this charge was error.

Sixth. That his honor erred in charging, "If you are satisfied that the injury did take place as alleged, then the inquiry will be, was the injury the result of accident, which could not be avoided by the use of due care on the part of defendant's employees? If so, the plaintiff cannot recover. If, however, the injury did take place as alleged, and might have been avoided by the use of due care by the defendant's agents or servants, the defendant would be liable unless the injury was the result of the plaintiff's negligence or misconduct. If the stock was killed as alleged, but was on the lands of the defendant at the time of the injury, and it has not been shown that the accident was the result of want of ordinary care and prudence on the part of defendant's servants, the plaintiff cannot recover." We see no error in this, provided that due weight was allowed to the rule in Danner's case, as to the *quantum* of evidence sufficient to establish the absence of due care *prima facie,* and also the force and effect of such *prima facies* as laid down herein above.

Seventh. Because his honor erred in charging, "If there was no evidence in this case except that the cattle were found on the railroad under such circumstances as to justify the belief that they were killed by a collision with defendant's cars, the law would presume that such killing was the result of negligence; but when the facts are known and put in evidence, there is no presumption of negligence, but the jury must find from the evidence whether

or not there was negligence on the part of the defendant, and the burden of proof is on the plaintiff. When the defendants are guilty of negligence, they are not excused from liability by the contributory negligence of the plaintiff, unless that negligence by the plaintiff was a proximate cause of injury." So much of this charge as held that when the facts are put in evidence by the defendant the presumption of negligence arising from the killing is removed, leaving the burden upon the plaintiff to show from the evidence independent of the presumption whether or not there was negligence, we think, for the reasons already given, was error, but in the remainder of this portion of the charge we concur.

Exception 8 complains that his honor, the Circuit Judge, failed to apply to the case section 1499 of the General Statutes, which provides that good and sufficient brakes shall be attached to every passenger car and to all freight cars except four-wheeled freight cars, and also upon every passenger train trusty and skilful brakemen, at least one to every two cars, and upon every freight train one to the last car of such train. His honor said as there was no evidence as to whether the freight cars were four-wheeled or not, nor whether they were furnished with the number of brakes required, the presumption was that the company had complied with the act. This was equivalent to saying that if a complaint was founded on the fact that the company had violated the act in these respects, that in the absence of proof of such violation, the complaint could not be well founded. There was certainly no error in this.

His honor further said that the train being a mixed one, composed both of passenger and freight cars, he was unable to apply the act (in so far, we suppose), as it required brakemen on passenger trains and freight trains running separately. Therefore he left it to the jury to determine whether the train was provided with the usual and proper appliances. Inasmuch as the act on the subject of brakemen applies in terms to passenger trains and freight trains considered separately, we do not see how it could be applied to a mixed train like the one in question, and, not applying, the Circuit Judge was not in error in ruling that the usual and proper appliances would be all that were necessary.

The plaintiff made three requests to charge, which were declined by his honor. 1st. The killing being proved, the law presumes negligence until the contrary is shown, and this rule "of law is unaffected by the recent statutes requiring stock to be kept enclosed." Under *Danner's Case*, and, also, *Jones'* and *Simkins' Cases, supra*, and *Walker's Cases*, 25 ⸱S. C., 142, the plaintiff was entitled to this charge.

· 2nd. "When it is doubtful whether an injurious act was negligent or accidental, the jury must decide, bearing in mind that it is not incumbent on the plaintiff to negative accident, but it is incumbent on the defendant to prove it." The Circuit Judge was right in not charging this request as made. As we have already said in all of these cases, the gist of the action being negligence, it is the duty of the plaintiff to prove it, and this may be done in one of the ways mentioned above, to wit, either affirmatively, by proving facts which will show negligence, or presumptively, by the rule in Danner's case; and until he makes out a case sufficiently strong to go to the jury in one or the other of these ways, the defendant may fold his arms. But such a case being made out, the defendant must by his evidence negative it, or the plaintiff will recover.

3rd. "To maintain the defence, that the killing is accidental, it is not enough to show that it was unintentional, but it must appear to have occurred unavoidably and without the least fault imputable to the person who does the injury." In so far as the Circuit Judge, in refusing this request, thereby impliedly held that an unintentional injury could not be a negligent one, or rather the result of negligence, we think it was error. Such a principle would prevent recovery in almost every case, as doubtless in most cases, if not in all, where injury has resulted from railroad trains, it has been unintentional.

It is the judgment of this court, that the judgment below be reversed, and the case be remanded for a new trial.

MR. JUSTICE McGOWAN concurred.

MR. JUSTICE McIVER, *dissenting*. The plaintiff brought this action to recover damages for the killing of two of her mules by the train of the defendant company on November 17, 1884. The

plaintiff, after offering testimony tending to show that the animals were killed by the train, closed her case, without offering any testimony tending to show negligence on the part of the defendant, whereupon the defendant moved for a non-suit, which was refused. The defendant then offered testimony tending to show the facts and circumstances under which the animals were killed, for the purpose of showing that there was no negligence on the part of the defendant, and for the purpose of showing that the mules were killed outside of the pasture in which they had been placed, and from which they had escaped by reason of a defective fence, and strayed on to the track of the defendant company, where they were killed, at a point where the land on which the track was located did not belong to the plaintiff, and was not enclosed in the pasture. The plaintiff offered testimony in reply, and the case went to the jury, who found a verdict for the defendant, and judgment being entered thereon, the plaintiff appeals upon numerous grounds in which exception is taken to nearly every proposition contained in what seems to be the carefully prepared charge of the Circuit Judge, set out in the "Case," as well as to his refusal to charge as requested. It will not be necessary to consider these grounds in detail, but only to determine the material questions raised by them. These questions are, 1st, as to the application of the rule in *Danner's Case;* 2nd, as to the effect of the stock law; 3rd, as to the instructions given to the jury in regard to section 1499 of the General Statutes.

Judge Kershaw, before whom this case was tried, unquestionably recognized the rule in Danner's case, as it was only upon that ground that he could have refused the motion for non-suit. But in addition to this, when he said to the jury, "If there was no evidence in this case except that the cattle were found on the railroad under such circumstances as to justify the belief that they were killed by a collision with defendant's cars, the law would presume that such killing was the result of negligence," he not only recognized but explicitly stated the rule to the jury. The real complaint is, however, that when he added the following language, "But when the facts are known and put in evidence, there is no presumption of negligence, but the jury must find from the evidence whether or not there was negligence on the part of the

defendant, and the burden of proof is on the plaintiff," he improperly restricted the application of the rule.

This gives rise to the vital question in this case, a question which has not yet been distinctly decided by this court. In order to determine this question properly, it is necessary to inquire into the nature and foundation of this celebrated rule. That it is simply a rule of evidence, is clear from the language used by Judge Frost in the case in which it was originally propounded, and is made more manifest by the following language used by the Chief Justice in the recent case of *Jones* v. *C. & G. Railroad Company*, 20 *S. C.*, at page 254: "There seems to be some misapprehension as to the real point decided in Danner's case, as well as to the principles upon which it rested. The court did not decide that railroad companies were responsible in all cases where stock were killed on their track, whether the killing was wilful, negligent, or accidental, nor did it discriminate between slight, ordinary, or gross negligence. These questions were untouched and left under the operation of the common law rules already established. But what the court did decide was rather in the nature of a rule of evidence than otherwise, determining the *quantum* of testimony which might carry a case of this kind to the jury, and it seems to have been founded upon what the court regarded as a necessity in such cases. The court simply held that the plaintiff upon proof of the killing might rest; that this would make out a *prima facie* case of all that was necessary to hold the defendant responsible, and if it remained unexplained, liability attached."

This is apparent, too, from the nature of the cause of action, one of the essential elements of which is the defendant's negligence, and which must, therefore, be established by the plaintiff in order to entitle him to recover. The test of this is that a failure to allege negligence in the complaint would be fatal on demurrer, as the complaint would fail to state facts sufficient to constitute a cause of action. And here lies the difference between this action and an action to recover damages for a trespass. There, it is only necessary to allege, and, of course, only necessary to prove, the act of violence constituting the trespass complained of, and any matter of excuse or justification relied on by the defen-

dant is a matter of defence, and must be proved by him.   Here, however, the negligence of the defendant is an essential element in the plaintiff's cause of action, and must, therefore, be not only alleged, but proved by him, and the only effect of the rule in Danner's case is to declare what shall be sufficient *prima facie* evidence of such negligence in certain cases.   It certainly never was designed to impair or in any way infringe upon the well settled and time honored rule that he who alleges must prove, and that a plaintiff must, therefore, establish by legal and satisfactory evidence all the essential elements of his cause of action.

This being the nature of the rule, the next inquiry is as to the foundation upon which it rests.   As has already been seen, it is founded upon the necessity of the case.   Indeed, it would be difficult to find any other foundation upon which it could rest.   It can scarcely be said that the natural and reasonable inference is that whenever cattle are killed by a railroad train, it is the result of negligence on the part of those in charge of the train.   When it is considered that a collision with cattle or other obstruction on the track always endangers not only the property of the railroad company, but also the lives of its employees in charge of the train, it would seem that the natural and reasonable inference would be the other way, and that the natural instinct of self-preservation would pre-suppose care rather than negligence on the part of those in charge of the motive power of the train.   Be that as it may, however, the authorities clearly show that this rule was founded on the necessity of the case, arising from the fact that where animals are killed by a railroad train, the owner of such animals is rarely able to produce witnesses to prove the circumstances under which they are killed, while the railroad company, having the control of their employees entrusted with the management of their trains, can readily produce such witnesses.

To use the language of Judge Frost in the case of Danner: "That the company did not produce witnesses to show how the damage occurred, nor explain why they omitted to do so, tends to induce the belief that they could make no defence.   They had the witnesses under their control.   The plaintiff may not have been present when his cattle were killed, and may not be able to discover who were the persons employed on the train when the

damage was done. When a party is charged with an act or declaration which may subject him to an action, and does not deny it, his silence is construed into an admission. The same construction may be put on a party's omission to offer testimony in his defence, when it is in his power to produce the witnesses who might exculpate him." This language is quoted with approval by the Chief Justice in *Jones* v. *C. & G. Railroad Company*, 20 *S. C.*, at page 255, and to it is added these words: "This was the principle upon which the case (Danner's case) turned, to wit, the fact that it was in the power of the defendant alone to explain, and that he failed to attempt it." ·

Such, then, being the nature and foundation of this purely artificial rule of evidence, it would seem clear that it is only applicable where the necessity for it exists. *Cessante ratione, cessat ipsa lex;* and that where, as in this case, the witnesses who were present at the time are examined, and the facts and circumstances under which the animals were killed are in testimony before the jury, there is no room or necessity for any presumption, and the jury must determine from such facts and circumstances alone whether a case of negligence has been made out.

Indeed, this is the necessary inference from the terms of the rule as stated in the cases. In Danner's case it is thus stated: "The point is whether, when it was proved that the cattle of the plaintiff, pasturing on his own land, were killed by the passenger train of the company in its progress along the track of the road, *and the particular circumstances of the destruction were not disclosed*, the jury might infer negligence from these facts." The rule as stated in *Wilson* v. *Railroad Company*, 10 *Rich.*, 52, is manifestly taken from the syllabus of Danner's case, and not from the opinion of the court as given above, and, therefore, requires no further notice. In *Murray* v. *Railroad Company*, 10 *Rich.*, 227, the rule is not formulated, but Judge Wardlaw, in delivering the opinion of the court, uses this language: "The court acquiesces, too, in the reference which the recorder made to Danner's case, for the presumption which arises from the killing of the horse by a train of cars, established and unexplained, and for the unfavorable inference raised by the absence of all the defendant's agents who were at the killing. Negligence rather than accident

is shown by proof of damage done by a train, *when nothing more appears.*"

In *Jones v. C. & G. Railroad Company*, 20 *S. C.*, at page 254, the Chief Justice, in commenting upon and explaining Danner's case, used this language: "The court did not hold that the proof of negligence was unnecessary, or that it was not incumbent upon the plaintiff to offer such proof, but it held that while this fact was a necessary ingredient in the liability of defendant, yet the proof of the killing, *unexplained by the circumstances or by the testimony of the defendant*, furnished in itself sufficient evidence of the presence of such negligence as would hold the defendant responsible." The italics used in the foregoing quotations are not employed for the purpose of conveying the impression that they are to be found in the cases from which these extracts are taken, but solely for the purpose of indicating what language is relied upon to show that the rule has always been confined to those cases in which the necessity for it exists—that is, where the fact that animals have been killed by a railroad train has been proved, *and nothing more ;* and that there is no authority for its application where the facts and circumstances of the killing are in evidence, from which the jury can determine whether there was any negligence on the part of the defendant.

Indeed, it is difficult to understand how the rule could be applied to such a case without not only utterly disregarding the foundation upon which it rests, but also changing its very nature, by which, in a certain class of cases, evidence is artificially supplied in the absence of testimony derived from the usual sources. For, when the facts and circumstances attending the killing are put in evidence, the jury must undoubtedly weigh them for the purpose of determining whether there was any negligence, and how such facts and circumstances are to be compared in weight with an artificial presumption—an unknown quantity—it is difficult to conceive. The only way such a presumption could operate in such a case would be by changing the burden of proof, and this would be in violation of the well settled rule both of logic and of law, that he who affirms must prove, and would not only relieve a plaintiff from establishing in the first instance one of the facts material to his cause of action, by testimony drawn from the

usual sources, but would require the defendant to disprove such fact.

It is contended, however, that the foregoing views are in conflict with the recent decision in the case of *Fuller* v. *The Port Royal & Augusta Railway Company*, 24 *S. C.*, 132, and it cannot be denied that some of the language used in that opinion, when looked at apart from the question made in that case, does appear to support such contention. But a careful examination of that case will show that the point there decided, which alone is authority, is not in conflict with the views above announced. In that case the Circuit Judge was requested to charge the jury, "That when the plaintiff proves the ownership and the fact of killing, he makes out a *prima facie* case and negligence is presumed; but when the defendant introduces evidence and explains the fact of the killing, the plaintiff is required to prove by a preponderance of testimony that the defendant was negligent;" and the sole question presented by the appeal was whether the judge erred in refusing to charge as thus requested. Now, when it is considered that the rule is, that "where requests are made for the charge of the judge upon propositions submitted as a whole, unless they are correct as a whole, it is not his duty to disconnect them, sustaining such as are sound and rejecting such as are unsound. He is to consider them as presented, and sustain or reject accordingly" (*Gunter* v. *Graniteville Manufacturing Company*, 15 *S. C.*, 443), it is very manifest that there was no error in refusing to charge the request in the form in which it was presented, as it implied that even though the evidence offered by the defendant explanatory of the fact of the killing might of itself show negligence, yet, still, the plaintiff would be bound to offer evidence to prove negligence.

As is said in *Fuller's Case:* "If the appellant had called upon the presiding judge to charge that in case the explanation disproved negligence, then the presumption could have no avail, but that plaintiff's case should then depend upon the preponderance of his evidence weighed with defendant's evidence; or if the judge had been requested to charge that upon the defendant introducing evidence to explain the killing, that then, whether the presumption of negligence arising from plaintiff's proof of ownership and

the fact of killing was overthrown would depend upon the pre-
ponderance of the evidence, and the judge had declined to so
charge, his appeal would be sustained. But this was not the
request. The request was, that in every case where the defen-
dant explained the killing, whether this explanation had the effect
of failing to exculpate, or exculpating, or inculpating the defen-
dant, the presumption is expunged from the case, and that the
plaintiff is then required to prove, by a preponderance of testi-
mony other than the presumption, that the defendant had been
negligent." The real vice in the request was that it went too
far, and covered a case in which the testimony adduced by the
defendant might itself show negligence; and, therefore, as it could
not properly be charged as a whole, under the rule above stated,
there was no error in refusing it altogether.

The true view of the matter is, that the artificial rule of evi-
dence established by Danner's case can only be available in the
absence of testimony derived from the usual sources, but where
such testimony is adduced, then the jury must draw their conclu-
sions *from that testimony*, as in all other cases. It is quite clear
that Judge Kershaw instructed the jury in accordance with this
view, and hence there was no error on this point.

2nd. As to the stock law. The jury were practically instructed
that since the enactment of that law, the same amount of care is
not exacted of a railroad company in running its train through
unenclosed lands as formerly, for the very obvious reason that
now, since by statute it is made unlawful for the owners of cattle
and other domestic animals to suffer them to roam at large beyond
the limits of their own land, those in charge of railroad trains
have not the same reason to expect to find cattle or other animals
upon the track running through unenclosed lands as formerly,
and, therefore, the same amount of care is not required to avoid
collisions with such unexpected obstructions. In this there was
no error. On the contrary, it seems to be in accordance with
what was said in *Simkins* v. *C. & G. Railroad Compang*, 20
*S. C.*, at page 265: "It should be observed here, however, that
negligence is a relative term, and its existence in a given case
depends upon the requirements of the occasion. I mean to say
that an act may be negligent under one state of facts, when the

same act, under a different state of facts, might be entirely free from negligence. For instance, to drive a wild and dangerous horse, and of unusual speed, along a crowded street, with hundreds of persons and vehicles on the way, would be a negligent act, for the injurious consequences of which, if any, a party could, no doubt, be held responsible; but to drive the same horse, at the same speed, along an unoccupied street, or along some secluded road in one's own enclosure, seldom or never travelled by others, might be free from every feature of negligence. So, too, in those counties in the State where the stock law has not become the law, and where cattle are at liberty to roam at large upon railroad tracks and elsewhere, at will, for a train of cars to dash forward, without the precaution which should be observed in such cases, might be negligent; whereas the same train, going at the same speed, and without the same precaution, in the counties where the stock law has been adopted and where the railroad employees had no thought that cattle would be found on the track, would not be a negligent act."

Whether it was a trespass for the mules of the plaintiff to go upon the unenclosed track or right of way, beyond the limits of the plaintiff's land and outside of the enclosed pasture in which they had been placed, in such a sense as would have justified the railroad company in taking up the animals and exacting from the owner the penalties provided by the stock law, is an immaterial inquiry in this case. In fact, it is not material to inquire as to whether the mules were, in any sense, trespassing on the railroad track, for the jury were not instructed that the fact that the mules were trespassing would relieve the defendant from liability unless *gross* negligence was established, as was insisted upon in the case of Simkins, *supra,* and in the case of Jones, *supra.* On the contrary, the jury were, in effect, told that even if the animals were trespassing, the defendant would be liable if the injury resulted from the want of ordinary care on the part of the servants of the company; and this was in accordance with the rulings in the two cases just cited.

3rd. As to the instructions given to the jury in regard to section 1499 of the General Statutes. In the absence of any evidence tending to show a failure on the part of the company to

comply with the requirements of that section, it is difficult to understand how the Circuit Judge could have properly instructed the jury otherwise than he did do. Where an attempt is made to hold a party liable for a failure to comply with the provisions of a statute, surely some evidence tending to show such failure should be offered.. Otherwise, the court, contrary to well recognized principles, would be asked to presume that a person has violated the law.

The requests to charge must be considered, not as abstract propositions, but with reference to the case as made by the evidence. So considered, under the views hereinabove taken, they were properly refused.

The question, whether the non-suit was properly refused, though argued here, is not properly before the court. The defendant does not appeal, and it does not appear in the "Case" that any exception was taken to the refusal of the motion. It may, however, be added that, under the rule in Danner's case, the motion was properly refused, for when the motion was made, no testimony as to the facts and circumstances attending the killing of the mules had been offered, and in that condition of things the rule was applicable.

For these reasons I am unable to concur in the conclusion reached by the majority of the court.

New trial granted.[1]

---

[1] This completes the cases of April Term, 1886.