## 10878

### GOODE v. SOUTHERN RY. CO.

#### (111 S. E. 876.)

1. RAILROADS—STATUTE REQUIRING SIGNALS HELD APPLICABLE TO ONE CROSSING SWITCH TRACK AND TURNING BETWEEN TRACKS.—Where plaintiff's driver was crossing a switch track at a public crossing, intending to turn between a switch track and the main line, the rule as to statutory signals applied to the case.

2. RAILROADS—NEGLIGENCE PRESUMED FROM KILLING MULE IN CHARGE OF DRIVER.—In an action by the owner of a mule against a railroad for killing the mule in charge of driver of team, an instruction that, where live stock is killed on a railroad track, negligence on the part of the railroad is presumed, was correct.

Before FEATHERSTONE, J., County Court, Greenwood, March, 1921. Affirmed.

Action by W. A. Goode against Southern Railway Co. From verdict for plaintiff the defendant appeals.

*Messrs. Bonham & Price,* for appellant, cite: *Statutory signals not necessary except at crossing*: 33 S. C., 139. *Rule in Danner's case not applicable*: 4 Rich., 329.

*Mr. R. F. Davis,* for respondent, cites: *Directed verdict improper where more than one inference can be drawn from testimony*: 106 S. C., 123; 99 S. C., 187; 113 S. C., 262; 99 S. C., 417; 74 S. C., 891; 91 S. C., 523; 91 S. C., 546. *Question for jury where statutory signals not given*: 91 S. C., 546. *Plaintiff a licensee and entitled to reasonable care*: 90 S. C., 331; 93 S. C., 329; 94 S. C., 105; 52 S. C., 328; 58 S. C., 70; 87 S. C., 324. *Complaint alleged common law and statutory negligence*: 61 S. C., 404; 64 S. C., 104; 91 S. C., 564. *Railroad not called on to re-*

*duce speed when approaching a crossing*: 7 S. C., 402. *Unless it is evident that traveler's team is not under control*: 52 S. C., 323. *Contributory negligence and proximate case is for jury*: 98 S. C., 125; 104 S. C., 116. *Presumption of negligence when animals are found dead on railroad track*: 4 Rich., L., 329; 25 S. C., 142; 47 S. C., 390; 20 S. C., 249; 20 S. C., 258; 26 S. C., 49; 93 S. C., 71; 82 S. C., 252; 52 S. C., 323; 83 S. C., 213; 94 S. C., 59; 24 S. C., 132; 103 S. C., 280; 106 S. C., 337; 105 S. E., 34. *Any fair jury would have rendered a similar verdict*: 93 S. C., 295.

April 25, 1922.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant's argument states:

"On May 19, 1920, plaintiff was working for the Greenwood County highway commission, building roads, and one of his teams approached a crossing below the city of Greenwood, not for the purpose of crossing, but for the purpose of going down the track and loading the wagon from a box car. One of the mules was struck and killed. A verdict of $350 was returned in favor of the plaintiff, from which verdict this appeal was taken."

### ARGUMENT

"There are three exceptions. The first two exceptions allege error on the part of his Honor in overruling motion for a directed verdict. His Honor charged the jury that the law with reference to the statutory signals applied to this case, and overruled the motion for a directed verdict. It seems to us that this case is not governed by the crossing statutes, as the plaintiff's driver was not there for the purpose of using the crossing to cross over the railroad track, but going down the railroad track on the same side from which he approached."

I. One of the plaintiff's witnesses testified:

"I was superintendent for W. A. Goode in May, 1920. We were contractors constructing roads in Greenwood County. I was present on the morning of this collision. That was down about Mr. Evans' mill. We had a carload of pipe, and we went down to unload it at Evans' mill. We had three wagons. I was driving one wagon in front, and two negroes in the other two wagons were behind me. I found that we would have to unload between the switch and the main line. We drove up on the crossing, across the switch track, and turned down between the main line and the switch track. The cars were about 200 feet from the crossing. I did not go across the main line. I went across the switch, and no train was in sight when I crossed. I went to the car and turned around, and Davenport, the second man, had come down in there with his team, and Hobson, with a third wagon, was on behind. When I looked around, this fellow Hobson was having trouble with his mules. They didn't want to come down between the tracks, but wanted to go straight across. His mules were on the track and he couldn't get them off. I jumped off and started to run back down there, and by the time I got there the train hit the mules; killed one, and knocked the other down. I don't know who placed the car on that crossing, and don't know whether it is a private track or a public track. It was a spur track of the Southern Railroad. It is a public crossing that crosses the main line and the switch. Just before reaching the main line, we had to turn sharply to the left. In order to make the turn, you would have to cross the switch track and let the mules walk on the main line to make that turn."

It will be seen that there was testimony to show that the plaintiff's team was using the crossing as a part of the highway and the crossing rule applies.

II. The second question is thus stated in appellant's argument:

"Perhaps the most serious question in the case is raised in the third exception, in which his Honor charged that, where live stock is killed upon the railroad company's track, the law presumes negligence on the part of the railroad company. His Honor was charging the law as laid down in the Danner's Case, 4 Rich., 329, 55 Am. Dec., 678. His Honor, in our opinion, was clearly in error in charging the law of the Danner's Case, as this was a team in charge of a driver."

The case of *Mack v. Railroad Co.,* 52 S. C., 323, 29 S. E., 905, is conclusive. At pages 343 and 344, of 52 S. C. (29 S. E., 912), we find:

"The killing of the mule by the defendant raised the presumption of negligence on the part of the defendant and this, presumption continues until it is rebutted by the testimony. The fact that the witnesses were examined by plaintiff in regard to the killing of the mule did not destroy the presumption arising from the mere fact of killing nor prevent the application of that rule."

In the Mack Case the mule was in charge of a driver. The Mack Case is conclusive and binding.

There was no error and the judgment was affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (dissenting): Action for damages on account of the alleged negligent and willful conduct of the defendant in a collision between a train of the defendant and a team of the plaintiff, near a public crossing, in which one of the mules was killed and the wagon destroyed.

It seems that the plaintiff, who was engaged as a contractor in road construction work, had a lot of piping in a car which had been placed upon a side track to be unloaded. He sent three wagons to unload the car. The

car had been placed on the side track about 200 feet from a public highway crossing, where the highway crossed both the side track and the main line, which at that point were about 14 feet apart measuring from the center of each. The wagon and team with which the train collided was the last in line of the three. The lead wagon and team, as the location of the side track and the main line at the crossing necessitated, reached the side track first, and, as the car was to be unloaded with the wagon standing between the car and the main line, it was necessary to turn sharply to the left and drive down between the side track and the main line to the car. On account of lack of space at the crossing between the side track and the main line, in order to make the sharp turn to the left, it was necessary for the team to walk for a short distance on the main line. This movement was successfully negotiated by the lead wagon, followed in a like manner by the second wagon. When the third wagon undertook the same movement, the mules were intent upon going straight across the main line, declining to make the turn to the left in the direction of the car that was to be unloaded. In the controversy that ensued between the mules and the driver the mules balked upon the main line, and were in that position when the train on the main line collided with the wagon and team, with the result above stated.

The versions of the affair given by the witnesses for the parties respectively are diametrically opposed to each other. Those for the plaintiff state that the team was on the main line at least three minutes while the driver was struggling to get them off. Both sides admit that the view was unobstructed for half a mile in the direction of the approaching train. If this be true, it raised an issue of fact whether or not the engineer took proper precautions to avoid the collision. The engineer gives a very reasonable account of the affair. He states that he saw

the team approaching the side track, and, not being aware
of the purpose to drive down between the side track and
the main line, he decided that there was abundant time for
it to cross both side track and main line, as he naturally
interpreted the purpose of the driver, but that when the
mules balked on the main line he did not have time to
stop his train. If the jury had accepted his version, they
should have found for the defendant. The conflicting
versions, however, presented an issue of fact which
they have solved against the defendant. The trial Judge
was clearly right in not directing a verdict. If the driver
was on the main line three minutes, it certainly could not
be declared as matter of law that he was grossly negligent
in making the attempt to cross, particularly as he was
not expecting to cross the main line.

The motion for a directed verdict does not raise the
question of the applicability of the crossing statute to the
case, and there is no exception to the Judge's ruling in
this respect. We have therefore not considered it. There
is a reference to it in the first exception, but only in
support of the motion for a directed verdict.

The only other question remaining to be considered is
the applicability of the rule in Danner's Case, which is
locally as well known as the rule in Shelley's Case.

The doctrine declared in this famous case (4 Rich., 329)
is conceded to be an exception to the rule that he who
comes into court alleging injury by reason of the negli-
gent act of another assumes the burden of establishing
both injury and negligence. But, by reason of the nature
of the animal injured, the ordinary circumstances of the
injury, the improbability of the owner being prepared
with evidence of the manner of its happening, and the
facility with which the railroad company may produce the
only witnesses to the event, the rule, as one of necessity,
has been declared that upon evidence that stock has been

injured by a railroad train a rebuttal presumption arises and continues through the trial that the injury was the result of the negligence of the railroad company.

Several considerations enter into the *ratio decidendi*:

(1) The nature of the animal, a brute creature with scarcely the instinct of self-preservation, unattended, is usually incapable of appreciating danger or escaping from it. In *Fowles v. Railway Co.,* 73 S. C., 306, 53 S. E., 534, following *Wilson v. Railway Co.,* 10 Rich., 52, and *Richardson v. Railway Co.,* 55 S. C., 334, 33 S. E., 466, the Court held that the rule did not apply to the killing of a dog upon the track; that, by reason of his intelligence, rapidity of movement, and agility, "in this respect it is reasonable to place him on somewhat the same footing as a human being when in the possession of all his faculties and capable of seeing the danger and escaping from it." (2) The collision ordinarily occurs at an isolated part of the track, and frequently at night. (3) It always happens to an estray, which presupposes the absence of the owner. (4) The owner, being absent, is unable to be prepared with evidence of the circumstance tending to show negligence. (5) The facility with which the railroad company may produce, in most cases, the only witnesses to the event. (6) The presumption that attaches against one in a position to explain and does not do so.

The reasoning of the decision is not satisfactory, and has not been followed in a single case reaffirming the rule declared, of which there are not less than 25. It is based upon the conception' that in every case of forcible injury, whether in trespass *vi et armis* against the offending servant personally, or trespass on the case against the master on his imputed liability, the fact of injury raises a presumption of negligence—a principle that cannot be sustained in view of the axiomatic rule that negligence must be alleged and proved, and a principle which, if sus-

tained on the general terms stated, would apply to all cases of tort. The opinion is weakened by the admitted fallacy:

"If the engineer drove over the cattle willfully, the company is not liable."

Great stress is laid in the opinion upon the failure of the railroad company to produce witnesses to explain the occurrence:

"When a party is charged with an act or declaration, which may subject him to an action, and does not deny it, his silence is construed into an admission."

And also upon the fact:

"The plaintiff may not have been present when his cattle were killed, and may not be able to discover who were the persons employed on the train when the damage was done."

We do not intend to intimate the slightest desire to question the salutary doctrine which the result of that case promulgates. What has been said is directed solely to a criticism of the grounds upon which it has been placed in that decision, and with a view to ascertain, by subsequent reaffirming decisions, the real and true ground of the rule.

In *Roof v. Railway Co.,* 4 S. C., 61, it is declared, evidently as the reason for the rule:

"The difficulty on the part of the owner from the absence generally of himself or third persons from the place in which the injury is inflicted, to show how it occurred, and the facility of the company, from its many employees present, to prove that it was accidental and unavoidable, makes it neither unreasonable nor unwise, when cattle are killed by the passing trains, to hold that *prima facie* the fact of negligence is established, throwing the onus of rebutting it on the company."

Discussing Danner's Case, in *Jones v. Railway Co.,* 20 S. C., 249, the Court says:

"But what the Court did decide was rather in the nature of a rule of evidence than otherwise, determining the quantum of testimony which might carry a case of this kind to the jury, and it seems to have been founded upon what the Court regarded as a necessity in such cases."

After quoting from the opinion in that case, the Court adds:

This was the principle upon which the case turned, to wit, the fact that it was in the power of the defendant alone to explain, and that he failed to attempt it."

. In *Walker v. Railway Co.*, 25 S. C., 141, the Court declares:

"The rule in question was established upon the principle that, the facts and circumstances of the killing, upon which the issue of negligence in cases of this kind must be determined, being in most such cases entirely within the knowledge of the party committing the injury it was right and proper that said party should be required to explain and exculpate. * * * Now in all these cases the party doing the injury is especially presumed to have the information as to all the facts and circumstances attending it, and there is no hardship in requiring him to bring these facts and circumstances forward to his exculpation, if they exist, and upon failure to do so that he shall be presumed to have committed the injury, which has been traced to his hands, through negligence."

*Joyner v. Railroad Co.*, 26 S. C., 49, 1 S. E., 52, the Court says:

"It was a judicial determination of the effect which such testimony offered by the plaintiff should have in all such cases, and it was established from the necessity of the case."

And further:

"But we think a careful reading of the cases will show that it was not the absence of testimony simply from

the defendant which required the rule, but it was the absence of exculpating testimony, which, if it existed, the defendant alone has the power to produce, as it was not supposed that the plaintiff could know the facts, these occurrences frequently taking place in the night time and in unfrequented places, when no one is present except the employees of the road, the necessity of the case, therefore, requiring the rule."

MR. JUSTICE McIVER (since Chief Justice) in his dissenting opinion upon the continuing effect of the presumption, recognizing the soundness of the rule, discusses the foundation upon which it rests as follows:

"It is founded upon * * * necessity. * * * Indeed, it would be difficult to find any other foundation upon which it could rest. * * * The authorities clearly show that this rule was founded on the necessity of the case, arising from the fact that where animals are killed by a railroad train, the owner of such animals is rarely able to produce witnesses to prove the circumstances under which they are killed, while the railroad company, having the control of their employees intrusted with the management of their trains, can readily produce such witnesses. * * * Such, then, being the nature and foundation of this purely artificial rule of evidence, it would seem clear that it is only applicable where the necessity for it exists." In *Drennan v. Railway Co.,* 91 S. C., 507, 75 S. E., 45, a case under the signaling statute, the Court said:

"The necessity of the case requires proof of more than ordinary negligence on the part of the person injured. A like necessity caused a change in the rules of evidence, where cattle were killed by a railroad train, as will be seen by the case of *Danner v. Ry.,* 4 Rich., 329, in which it was held that there was a presumption of negligence arising from the mere act of killing the stock."

In *Moorer v. Railway Co.*, 103 S. C., 280, 88 S. E., 15, the rule is characterized as one "of necessity."

Considering then the rule and the foundation of it, under the principle, *"Ratione cessante lex ipsa cessat,"* it cannot be made applicable except to those cases whose peculiar circumstances develop the conditions under which it was given birth. Where a team has been struck at or near a crossing, or upon the track at any other point, in broad daylight, the team being in control of the owner or his agent, the case does not present a single circumstance justifying, as of necessity, the application of so exceptional a doctrine.

Suppose that the driver of the team had received personal injury at the time the mule was killed and the wagon destroyed; would there be one rule applicable to the mule and another to the driver and wagon?

The plaintiff's cause of action was for damage to the mule and to the wagon. Even assuming that the rule in Danner's Case applied to the killing of the mule the presiding Judge indiscriminately applied it to the whole cause of action, wagon and mule; no one would contend that it applied to the wagon.

We are not unmindful of the declaration of this Court in the case of *Mack v. Railway Co.*, 52 S. C., 323, 29 S. E., 905, 40 L. R. A., 679, 68 Am. St. Rep., 913:

"The killing of the mule by the defendant raised a presumption of negligence on the part of the defendant, and this presumption continued until it was rebutted by the testimony."

No question was raised in that case as to the applicability of the rule in Danner's Case. The defendant appears to have conceded its applicability, and contended that the presumption disappeared as soon as the defendant fully explained the circumstances—a contention which has great force, as may be seen from the dissenting opinion of

Chief Justice McIver in *Joyner v. Railway Co.*, 26 S. C., 49, 1 S. E., 52, but which was overruled in that case.

The case was not intended to discuss or decide an apparently conceded point and the declaration of the Court under such circumstances is not conclusively binding upon this case.

The judgment of this Court should be that the judgment appealed from be reversed, and that the case be remanded to the County Court of Greenwood County for a new trial.