JONES v. COLUMBIA AND GREENVILLE RAILROAD COMPANY.

1.  The killing of stock by a railroad train being proved, the law presumes that the injury was done through the negligence of the railroad company, until the contrary is shown.   This rule of law is unaffected by the recent statutes requiring stock to be kept enclosed.
2.  *Danner* v. *Railroad Company*, 4 *Rich.* 329, explained and affirmed.
3.  If cattle on the road-bed of a railway were trespassers, and while so trespassing are negligently injured, nevertheless, the owner of such cattle would be entitled to recover from the railroad company damages for the injury so done.
4.  Where the killing of cattle by a railroad train was proved, and the company offered no testimony in defense, the Circuit judge committed no error in refusing to charge that the company were not liable unless shown to have been guilty of gross negligence or willful injury.
5.  No evidence being offered by the defendant, the question of contributory negligence was not involved in the issue submitted to the jury.

Before WALLACE, J., Abbeville, February, 1883.

This was an action by Thomas Jones against the Columbia and Greenville Railroad Company commenced in a trial-justice's court, on March 23d, 1882, to recover the value of two hogs and one sheep, alleged to have been killed on the railway track by defendant's train.

The hogs were killed by a freight train in December, 1881, before Christmas, late in the evening, just before dark. The sheep was killed by a freight train in the evening, in January, 1882. The stock got out of plaintiff's pasture alongside of the railroad. The plaintiff did not report the killing to the railroad at the time.

In the case agreed upon, the following statement appears : " Defendant offered no testimony, the complaint served having failed to specify time, or place, or circumstance ; and no notice of the stock-killing having been given the railroad company until the summons was served, at least two months after the sheep was killed. The defendant, during the time included, was running six or eight freight trains a day, and two passenger trains. Among so many trains after so long a time, it was impossible to discover by what train, engineer or conductor the alleged damage was done."

Judgment was rendered by the trial-justice in favor of the plaintiff. Defendant appealed to the Circuit Court, and trial was had *de novo* before his Honor, Judge Wallace, at the February Term, 1883, the testimony on the trial being read to the jury. The verdict was for the plaintiff, for seven dollars and costs.

Notice of appeal was duly given, and exceptions filed, and the case came up to this court on the following grounds of appeal :

1. Because his Honor erred in charging the jury that, the killing of stock by the company's train being proved, the law presumes that the injury was done by the negligence of the railway; that this has been the law of South Carolina ever since *Danner's Case,* and that the stock law has not removed this presumption.

2. Because his Honor erred in refusing to charge that where the law forbids the stock owner to permit his stock " to run at large beyond the limits of his own land, or the lands leased,

occupied or controlled by him," and where there is no law compelling the railway company to fence its track, if the cattle are at large or have escaped from a fenced pasture, and are killed or injured on the track by the railway company's trains, the stock owner cannot recover damages against the company.

3. Because his Honor refused to charge that in such case the burden of proof is on the stock owner to show that he is not guilty of contributory negligence.

4. Because his Honor refused to charge that the stock owner cannot recover unless the injury is attributable entirely to the fault and negligence of the railway company.

5. Because his Honor refused to charge that if the jury believe the stock were at large because of the owner's negligence, they cannot give him damages unless the railway company is proved guilty of gross negligence, or that the injury was inflicted wantonly and willfully.

6. Because his Honor refused to charge that the stock owner cannot recover damages if the jury believe there was a want of due diligence on both sides; and that a mere preponderance of negligence on the part of the railway company will not entitle the stock owner to recover where both parties are at fault.

7. Because his Honor refused to charge that, under the provisions of the stock law, stock roaming at large on the track or road-bed of a railway company are trespassers, and their owner cannot recover for injury done them by the railway trains unless the company's gross negligence or willful injury is proved.

*Mr W. C. Benet*, for appellant.

The enactment of the stock law has altered the circumstances under which the rule in *Danner's Case*, 4 *Rich.* 329, was perhaps to be tolerated. 10 *Rich.* 227; 4 *S. C.* 61; 7 *Id.* 167; 10 *Rich.* 53; 2 *Stat.* 81; 6 *Stat.* 331; 15 *Stat.* 654; 16 *Stat.* 251, 400, 689; 17 *Stat.* 591, 854; *Cooley Torts* 337; 5 *Wait Ac. & Def.* 331; *Pierce Railr. L.* 298, 428; 19 *S. C.* 20; 1 *Thomp. Negl.* 502, 512, § 15; 1 *Add. Torts* 42; 4 *Wait. Ac. & Def.* 687; *1 Redf. Railw.* 466, 471, 500. Under the stock law, the stock owner cannot recover damages for stock killed by a train on

the railroad track. 4 *N. Y.* 349 ; 2 *Vr.* 229 ; 28 *Ill.* 513 ; 11 *Barb.* 112 ; 49 *Pa.* 107 ; 51 *Id.* 240 ; *Cooley Torts* 654 ; 1 *Thomp. Negl.* 500, 531 ; 26 *N. Y.* 428 ; 8 *Rich.* 126 ; 15 *Id.* 209. Under this law, burden of proof is on stock owner to show that he was not guilty of contributory negligence. *Cooley Torts* 429, 673 ; 8 *Rich.* 126 ; 4 *Wait Ac. & Def.* 687 ; 1 *Add. Torts* 42 ; *Pierce Railr. L.* 298, 429. To entitle plaintiff to recover, defendant must be solely at fault. 1 *Thomp. Negl.* 495 ; 2 *C. B. (N. S.)* 740. If negligence on both sides, the company must be guilty of gross negligence. *Pierce Railr. L.* 402 ; 4 *Wait Ac. & Def.* 687 ; *Cooley Torts* 655 ; 1 *Redf. Railw.* 477 ; 115 *Mass.* 460 ; 121 *Id.* 118 ; 1 *Otto* 494 ; 5 *Kans.* 168 ; 51 *Pa. St.* 240. Stock on a railroad are trespassers, and only for injuries inflicted through gross negligence are the company liable. *Cooley Torts* 338 ; 42 *Verm.* 265 ; *Pierce Railr. L.* 402 ; 17 *Ill.* 541, 580 ; 1 *Redf. Railw.* 468. In this case, the company explained why they did not produce their agents to show how the killing occurred.

*Messrs. Lee & Blake,* contra.

November 27th, 1883. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The action in this case was brought to recover the value of two hogs and one sheep alleged by plaintiff to have been killed on the railway track of the defendant. The plaintiff relied upon the presumption of negligence arising from the naked fact of the killing, as held in the celebrated case known as *Danner's Case,* 4 *Rich.* 329. Judge Wallace, who heard the case on appeal from a trial-justice court, sustained the ruling in *Danner's Case* as applicable to this, no testimony having been offered by the defendant. The appeal controverts this charge of the Circuit judge, and insists that since the passage of the "stock law," which was of force in Abbeville at the time of the killing, that *Danner's Case* has no application in such cases, and that now, to make railroad companies responsible for the killing of stock, &c., negligence must be affirmatively and expressly proved, as is contended to be the,

law in all other cases where actions are brought for injuries sustained. In other words, that the stock law has withdrawn such cases as this from the operation of *Danner's Case*. The appeal contains several other exceptions besides this, but this is the main one and we will consider it first.

There can be no doubt but that the recent acts of the legislature, known as the stock law, have materially and fundamentally changed the previous law, as to the roaming at large of cattle. Prior to the passage of these acts, the law, in its effect, required crops to be fenced in and it permitted cattle to roam at will. It was then no trespass for the stock of one man to graze upon the uninclosed lands of another. Now, however, this is changed, and stock is required to be fenced in, and crops need not be inclosed. There can be no doubt either that the effect of this legislation has been to make the roaming of cattle upon the uninclosed lands of others than the owner of such cattle a trespass, for which such owners may in some form or other be held responsible. These principles are conceded.

Was *Danner's Case* based on the law first announced above to such extent that the doctrine announced and applied there would not have been announced and applied but for the fact that that law was then of force? Would the presumption of negligence arising from the naked fact of killing as established in that case, have been established by the court, had the present stock law been of force making it a trespass for the cattle of others to roam upon other lands than that of their owners, instead of permitting, and to some extent legalizing, such roaming? If the foundation of *Danner's Case* was the law as it then stood as to crops and cattle, requiring the one to be fenced in and the other to be fenced out, then there would be much merit in the appeal and the case would be relieved from many of the difficulties now surrounding it. It would not involve the overruling of *Danner's Case* or touch the wise doctrine of *stare decisis*, as in that view the underlying principles of law controlling the facts in *Danner's Case* being changed by subsequent legislation, as it is contended, the question would be presented in an entirely new attitude.

If, however, *Danner's Case* rested upon other principles than

this, principles which have not been impaired by the subsequent stock law legislation—principles which our Supreme Court at that time found well established and settled—then that case would stand directly across the path of the appellant, and the plaintiff might successfully invoke the doctrine of *stare decisis.* *Danner's Case* was not only solemnly decided after careful examination by the court of last resort, but it has been subsequently approved and affirmed. And that it has been the law of this State since its decision has never been doubted. And although it may seem to be a new principle and not in full harmony with many railway decisions in America, yet it would be a precedent which under the circumstances this court would feel constrained to follow, unless upon examination it is ascertained to have been founded upon a state of facts requiring the application of a different principle of law from that which the facts now require. In fact we would have no other alternative unless we disregarded the settled practice and rules of this court.

There seems to be some misapprehension as to the real point decided in *Danner's Case,* as well as to the principles upon which it rested. The court did not decide that railroad companies were responsible in all cases where stock were killed on their track, whether the killing was willful, negligent or accidental; nor did it discriminate between slight, ordinary or gross negligence. These questions were untouched and left under the operation of the common law rules already established. But what the court did decide was rather in the nature of a rule of evidence than otherwise, determining the *quantum* of testimony which might carry a case of this kind to the jury, and it seems to have been founded upon what the court regarded as a necessity in such cases. The court simply held that the plaintiff, upon proof of the killing, might rest; that this would make out a *prima facie* case of all that was necessary to hold the defendant responsible, and if it remained unexplained, liability attached.

The court did not hold that the proof of negligence was unnecessary, or that it was not incumbent upon the plaintiff to offer such proof, but it held that while this fact was a necessary ingredient in the liability of defendant, yet the proof of the killing, unexplained by the circumstances or by the testimony of the

defendant, furnished in itself sufficient evidence of the presence of such negligence as would hold the defendant responsible. The court said: "That the company did not produce witnesses to show how the damage occurred, nor explain why they omitted to do so, tends to induce the belief that they could make no defense. They had the witnesses under their control. The plaintiff may not have been present when his cattle were killed and may not be able to discover who were the persons employed on the train when the damage was done. When a party is charged with an act or declaration which may subject him to an action, and does not deny it, his silence is construed into an admission. The same construction may be put on a party's omission to offer testimony in his defense when it is in his power to produce witnesses who might exculpate him." This was the principle upon which the case turned, to wit, the fact that it was in the power of the defendant alone to explain, and that he failed to attempt it. There is not a word or an intimation appearing in the case which involved the stock law as it then existed, as one of the elements of the decision.

Nor can we say that the opinion of the court was unsustained by authority. The cases relied on and cited seem to support it. *Leame* v. *Bray*, 3 *East* 593; *Weaver* v. *Ward*, *Hopk.* 134; *Christie* v. *Griggs*, 2 *Cam.* 79; *Piggott* v. *Eastern Counties R. R. Co.*, 54 *Eng. Com. L.* 228; *Ellis* v. *Portsmouth & Roanoke R. R.*, 2 *Ired.* 140. But whether this be so or not, *Danner's Case* was heard in 1851, over thirty years ago. Since then it has been regarded as the settled law of this State. It had the sanction of an unanimous court, Judge Frost delivering the opinion of the court and O'Neall, Evans, Wardlaw and Whitner concurring, than whom neither our judicial gallery nor that of any State has ever furnished a more imposing array. It has grown gray with time, and the country, citizens, railroads and all have understood it and conformed to it. Under these circumstances its roots have gone down too deep to be torn up easily.

In addition to the authorities referred to *supra*, in *Cooley on Torts* the following is found, which fully accords with *Danner's Case*. Mr. Cooley says: "The duty being pointed out, the fail-

ure to observe it is to be shown; in other words, the existence of negligence. This is an affirmative fact, the presumption always being, until the contrary appears, that every man will perform his duty. But the *quantum* of evidence necessary to make out a *prima facie* case of negligence is very slight in some cases, while in others a more strict showing is required. A bailee who returns in an injured condition an article which has been loaned to him, is by this very condition called upon to explain, for a presumption of fault must arise therefrom against him. If a child is sent into the streets of a city in charge of a spirited team, which, apparently, he is too young and weak to manage, the negligence seems manifest, while there might be no appearance of want of due care had the team been broken down by labor and years. Often the injury itself affords sufficient *prima facie* evidence of negligence. Thus if the buildings of individuals are destroyed by fire originating in sparks from a locomotive, the fire itself is held to be evidence of negligence which requires to be overcome by some showing that the railway company provides suitable precautions against such an occurrence, &c. There is consequently nothing unreasonable in presuming negligence from the occurrence of an injury and calling upon the railway authorities to rebut the *prima facie* case by showing that they took reasonable care," &c. *Cooley Torts, p.* 665.

The rule in *Danner's Case* is not modified either in *Murray's, Roof's* or *Rowe's Case.* In *Murray's Case,* Judge Wardlaw did say, that on account of the fence law which prevailed in the State at that time, "it was not unlawful for the owner of horses or cows to permit them to roam at large upon all lands of his own or of others that were not guarded by a fence such as the law prescribes; and the entry of a horse or cow upon the uninclosed track of the railroad is no trespass. The owner of cattle who permits them to roam runs the risk of all damage which they may receive accidentally, and so may sometimes be said to be negligent of his own interests; but he is not guilty of legal negligence such as embarrass his recovery from a person who, through negligence, hurts his cattle." He further said: "The court acquiesces, too, in the reference which the recorder made to *Danner's Case* for the presumption which arises from the

killing of the horse by a train of cars established and unexplained, and for the unfavorable inference raised by the absence of all the defendants' agents who were at the killing. Negligence rather than accident is shown by proof of damage done by a train when nothing more appears," &c. 10 *Rich.* 231. In *Roof's Case,* 4 *S. C.* 61, *Danner's Case* was followed upon the principle of *stare decisis,* and was affirmed in *Rowe's Case,* 7 *S. C.* 167. We find, therefore, no error in his Honor's charge as to the first exception.

The other exceptions involve refusals to charge. It is to be regretted that the charge of the judge is not found in the brief. It would have been better to have had it set out in full so that we might have seen what he did say, and, therefore, been better able to determine the force and effect of the exceptions. The second, fifth and seventh exceptions raise substantially the same point, to wit, that inasmuch as under the stock law, cattle roaming at large on the track or road-bed of a railway company are trespassers, their owners cannot recover for injury done them by the trains under any circumstances, as urged in the second exception, and in the seventh, unless the company's gross negligence or willful injury is proved.

We think these requests were properly refused. Certainly, the first could not have been charged, because, even assuming that it might be held to be a trespass for cattle to roam upon a railroad track in those counties where the stock law prevails, (as to which we do not now express an opinion,) yet this would not have warranted the charge requested. True, where one is a trespasser upon the land of another, either in himself, his servants, or his cattle, he may be made responsible in an action for damages; but we know of no law which would warrant the injured party to take the law into his own hands and kill the trespasser. The courts may redress his wrongs; but he has no authority to undertake to right himself, much less to inflict vengeance.

No doubt some negligence must be proved; whether it must be gross or not is not necessary for us to determine. In fact, the difference which is sometimes attempted to be drawn between

R

·different kinds of negligence is so shadowy that it is by no means easy to define clearly what is gross, or what is ordinary, or what is the degree in a special case. But if there be a distinction, it was not necessary for the judge to charge as requested here. The rule in *Danner's Case* required him to say when the killing was proved, that the plaintiff might rest, and if the defendant failed to explain this killing so as to exculpate the company, either by proof that the killing was accidental, unavoidable or free from negligence, then the fact of killing, with the *prima facie* case which it made, was sufficient, as this furnished all the proof which the case in the first instance required. This the judge charged.

As to the third, fourth and sixth exceptions. These raise the question of contributory negligence. The facts of the case are not fully stated in the brief; so far as it appears, no testimony was offered by the defendant; in fact, it is so stated in the brief. The question, then, as to contributory negligence, was an abstract question having no reference to the facts. These exceptions may have contained good law, but it was irrelevant here.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.