MOLAIR v. PORT ROYAL & AUGUSTA RAILWAY COMPANY.

1. In the running of its trains, a railroad company must exercise ordinary care, such as prudent persons exercise in the management of their private affairs; and it is the absence of this degree of care which constitutes such negligence as will render the company liable for mules killed by a running train. The charge in this case having held the defendant company to a higher degree of care, a new trial was granted.

2. Persons in charge of a running train of cars are not required to exercise the same degree of vigilance as to stock on the track where they are prohibited from roaming at large as where they are not so prohibited; and therefore the judge erred in instructing the jury that the stock-law had nothing to do with the case.

3. The judge erred in submitting to the jury a question as to which there had been no testimony.

Before ALDRICH, J., Barnwell, March, 1887.

This was an action to recover damages from the defendant company for the killing of two mules. Defendant requested the judge to charge that much less care is required of railroad companies in providing against stock on its track since the passage of the stock-law than before its passage; and he so charged. His general charge was as follows:

This is an action brought by Mr. Molair, as you have been informed, a very highly respected and worthy citizen, against the railroad company for the value of two mules which were killed on that track, which he values at four hundred and twenty-five dollars. These corporations, as you have been informed, have received from the legislature very high privileges. They are very valuable adjuncts to society; they convey passengers and freight with celerity and with economy. They may run through

your houses ; they may run through the graves of your ancestors ; they may run through the graves of your wives and children, provided they pay the compensation which the law has required to be assessed in such cases. In return for this they are expected to perform all the duties required by their charter, and they are expected to use such care and diligence in the performance of those duties, that neither society nor individuals can be injured, so that the question, and perhaps the only question in this case which you have to decide, is this : Was this an unavoidable accident ? Was the killing of these mules by that railroad train an unavoidable accident ? Could any care and diligence have prevented the loss which Mr. Molair has sustained ?

This is your first question, and this is a question of fact. You are to judge of that by the evidence which you have heard. The train came up there at its appointed time ; the mules had been securely stabled, and, for some reason not explained, whether it was the noise of the train or something else, they broke out of the stables and took their way on the road. They then ran down that railroad track, the engine and train ran upon them, and they were killed. Now, was this an unavoidable accident ? Could ordinary care and diligence, or extraordinary care and diligence, have prevented this accident ? I don't think the stock law has anything to do with it. It is true, the stock law is of force in this county. That law was intended to keep cattle and stock within the pastures. These mules were not turned out; they were in a stable, as you are informed, securely fastened, but for some reason, not explained, they got out. Well, now, taking down that railroad on a down grade with a heavy freight train behind it, could the engineer, by ordinary care and diligence, not ordinary, but by care and diligence, have prevented running upon these mules ? When they came to the culvert they were over-taken, it would seem, by the train, and were mangled and killed. Was that culvert in good order ? This is another question which you will have to ask yourselves. There is no proof about it one way nor the other, but it is one of the elements which you will have to consider in coming to your conclusion as to care and diligence.

There is no law in this case, gentlemen ; the law has been very

clearly stated by the defendant and frankly admitted by the plaintiff. All the law has been read to you and the court approves it, so the only question for you to decide is, Could the killing of these mules have been prevented by care and diligence? Was it an unavoidable accident? If it was not, then the next question will be, What is the damage Mr. Molair has sustained? You cannot go beyond four hundred and twenty-five dollars, for that is all he claims. He says that the mules were valuable, and, in fact, the evidence goes to sustain that position. He says he has offered the company, "Just give me my mules back; I want no damages; put me where I was on the night of the 12th of March, 1886, and I am satisfied." That is the whole case, gentlemen.

The jury found a verdict for the plaintiff for $425.

Defendant appealed on the following grounds:

I. Because his honor erred in charging the jury, "The train came up there at its appointed time; the mules had been securely stabled, and for some reason not explained, whether it was the noise of the train or something else, they broke out of the stable and took their way on the road. They then ran down that railroad track, the engine and train ran upon them, and they were killed. Now, was this an unavoidable accident? Could ordinary care and diligence, or extraordinary care and diligence, have prevented this accident?"

II. Because his honor, after charging the jury, as requested by the defendant, "that much less care is required of railroad companies in providing against stock on its track since the passage of the stock law than before its passage," erred in charging the jury, "I don't think the stock law has anything to do with it. It is true, the stock law is of force in this county. That law was intended to keep cattle and stock within the pastures. These mules were not turned out; they were not roaming at large; they were in a stable, as you are informed, securely fastened, but for some reason, not explained. they got out."

III. Because his honor erred in charging the jury, "When they came to the culvert they were overtaken, it would seem, by the train, and were mangled and killed. Was that culvert in good order? This is another question which you will have to ask

yourselves.   There is no proof about that one way nor the other, but it is one of the elements which you will have to consider in coming to your conclusion as to care and diligence."

IV. That his honor erred in charging the jury, "Was it an unavoidable accident ?   If it was not, then the next question will be, What is the damage Mr. Molair has sustained ?   You cannot go beyond four hundred and twenty-five dollars, for that is all he claims.   He says the mules were valuable, and, in fact, the evidence goes to sustain that position."

V. Because his honor erred in charging the jury, "Could the engineer, by ordinary care and diligence, not ordinary, but by care and diligence, have prevented running upon these mules ?"

VI. Because his honor erred in charging the jury upon the facts.

*Messrs. Elliott & Howe,* for appellant.

*Mr. Robert Aldrich,* contra.

July 13, 1888.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   The action in this case was for the recovery of damages sustained by the plaintiff by reason of the alleged negligent killing of two of his mules by defendant's train. Negligence on the part of the defendant being the gist of the action, that fact is alleged in the complaint and denied in the answer, and that was really the only issue in the case, the fact that the animals were killed by the train being conceded.   The testimony on the part of the plaintiff tended to show that the mules were hired by the plaintiff to Dr. Kirkland to take him to Allendale, and that when he reached Brunson's, which seems to be a station on defendant's road, he stopped for the night, and the mules were "securely stabled" near the railroad track.   During the night, from some cause not explained by the testimony, the mules broke out of the stable and ran down the railroad track to a culvert, about a mile and a quarter below Brunson's, where they were found next morning dead, with their bodies mangled.   "The cross-ties in the culvert were pushed up together."   Another witness for plaintiff, who traced the track of the mules, said:

"The mules appeared to have been running rapidly from the time they left the stable"; and he also stated that "the cross-ties of the track for several feet on side next to Brunson were crowded together." A third witness testified that the mules broke out of the stable when the train came up to the tank to take water, and after they broke out he took a lantern, the night being dark and rainy, and followed the tracks, and "found the mules at the culvert," both dead.

The conductor and engineer of the train were examined on behalf of defendant, the former testifying that "it was a dark, foggy night," and the train, which was a freight train, was "running in accordance with the rules of the road." The engineer said: "The grade at Brunson from the tank to the culvert is a down grade. I had a train of eighteen cars on the night the mules were killed, four of them were loaded. The night was dark and foggy; * * * when we got nearly to the culvert I saw two animals in the culvert. I immediately reversed my engine and gave her steam. I did not have time to blow the whistle before the mules were killed. My engine · was in good order, and I did everything in my power to avoid killing the mules, but could not do so. I was keeping a good lookout, but on a night like that it is impossible to see further than twenty to thirty yards ahead of you. I could not have stopped my train on that grade within a quarter of a mile if I was running at the schedule rate of speed, that is, a train such as I was then running. When I saw the mules, they were in the culvert. * * * It was dangerous to strike the mules, for it might have thrown the train from the track. I would have avoided the risk on my own account, if I could have done so. Everything was done to avoid killing the mules which could have been done."

The Circuit Judge in his charge to the jury, which seems to be set out in full in the "Case," and, in justice to all parties concerned, should be incorporated in the report of this case, after stating in general terms the large privileges conferred upon corporations of this character by the legislature, said: "In return for this they are expected to perform all the duties required by their charters, and they are expected to use such care and diligence in the performance of those duties that neither society nor

individuals can be injured, so that the question, and perhaps the only question in this case which you have to decide, is this : Was this an unavoidable accident ? Was the killing of these mules by that railroad train an unavoidable accident ? Could any care and diligence have prevented the loss which Mr. Molair has sustained ? * * * The train came up there at its appointed time; the mules had been securely stabled, and, for some reason not explained, whether it was the noise of the train or something else, they broke out of the stable and took their way on the road. They then ran down that railroad track, the engine and train ran upon them and they were killed. Now, was this an unavoidable accident ? Could ordinary care and diligence, or extraordinary care and diligence, have prevented this accident ? I don't think the stock law has anything to do with it. It is true, the stock law is of force in this county. That law was intended to keep cattle and stock within the pastures. These mules were not turned out; they were in a stable, as you are informed, securely fastened, but, for some reason not explained, they got out. Well, now, taking down that railroad on a down grade with a heavy freight train behind it, could the engineer, by ordinary care and diligence, not ordinary, but by care and diligence, have prevented running upon these mules ? When they came to the culvert they were overtaken, it would seem, by the train and were mangled and killed. Was that culvert in good order ? This is another question which you will have to ask yourselves. There is no proof about it one way nor (or) the other, but it is one of the elements which you will have to consider in coming to your conclusion as to care and diligence." Then, at the conclusion of the charge, the jury were told : "The only question for you to decide is, Could the killing of these mules have been prevented by care and diligence ? Was it an unavoidable accident ?"

Under this charge the jury found a verdict for the plaintiff, and the defendant appealed upon the several grounds set out in the record.

It seems to us that there was error on the part of the Circuit Judge in laying down the rule as to the degree of negligence which would render the defendant liable in a case of this kind. In *Simkins* v. *C. & G. R. R. Co.* (20 S. C., 258), the Chief

Justice, in considering this subject, after saying that negligence was the absence of care, and adverting to the different degrees of care which may be exercised in the several classes of cases mentioned, says: "Now, there are but few cases where that minute and scrupulous attention, referred to above in the first class, is required by the law, and consequently but few cases where slight negligence can be made the foundation of an action for damages. All that the law requires, as a general rule, is that sort of care which prudent men, influenced by personal interest, ordinarily bestow on their business and conduct, and it is the absence of this kind of care which in most cases gives rise to actions at law." This, we think, is a correct statement of the rule as to the degree of care required of the defendant in cases like that now under consideration. The defendant is not held to the highest possible degree of care, but only ordinary care, that is, such as prudent persons usually exercise in the management of their private affairs. Hence it is the absence of that degree of care which constitutes such negligence as will render the defendant liable.

This being the rule, our next inquiry is whether the Circuit Judge has gone beyond it in his charge to the jury. It seems to us clear that he has. When he said to the jury that the only question for them to decide was whether the killing of the mules was an *unavoidable* accident, such language necessarily implied that if the disaster could have been avoided by any *possible* degree of care on the part of the defendant, then the company was liable; and this was made more manifest by the phraseology which he adopted in again stating the question: "Could any care and diligence have prevented the loss which Mr. Molair sustained?" The jury could not well understand such language to mean anything else but this: that the defendant was liable, unless the accident was *unavoidable*, that is, could not have been avoided by the utmost possible degree of care, or unless the plaintiff's loss could not have been prevented by the exercise of *any* amount of care and diligence.

It is contended, however, that this instruction to the jury was qualified and explained when in a subsequent part of the charge the judge used this language: "Now, was this an unavoidable

accident ?    Could ordinary care and diligence, or extraordinary care and diligence, have prevented this accident ?"    And, again, when he said to the jury : "Could the engineer, by ordinary care and diligence, not ordinary, but by care and diligence, have prevented running upon these mules ?"    It seems to us that this language must be regarded as either contradictory in its character, and as therefore tending to confuse and mislead the jury, or as rather strengthening than qualifying the previous part of the charge already commented on.    If it is to be regarded as an instruction to the jury that the defendant was not bound to exercise anything more than ordinary care and diligence, then it is not only inconsistent with the first part of the charge, where the jury were told that the only question for them was whether the accident was unavoidable, or whether it could have been prevented by the exercise of *any* amount of care; but it is also inconsistent with what immediately follows, "Could the engineer, by ordinary care and diligence, *not ordinary*, but by care and diligence, have prevented running upon these mules ?"

Now, as we would not be willing to attribute to the Circuit Judge such inconsistent and conflicting instructions, we are bound to assume that in the language relied upon he did not intend to qualify his previous instruction to the jury, that the test of defendant's liability was whether the accident could have been avoided by the exercise of *any* degree of care, whether it was in fact absolutely unavoidable; but that his real meaning was that, if the disaster could have been prevented, either by the exercise of ordinary care and diligence, or by extraordinary care and diligence, then the defendant would be liable ; and when he said the question was whether the engineer could, by ordinary care, have prevented the train from running over the mules, and immediately added the words, "not ordinary, but by care and diligence," he meant to say such care and diligence as he had previously indicated was necessary, and that the jury must not limit their inquiry to the question whether the accident could have been prevented by ordinary care, but must go on and inquire whether it could have been prevented by such care and diligence as he had previously indicated was necessary.    In this way alone can we reconcile the different portions of the charge which are appa-

rently conflicting.    And when we find that in the conclusion of the charge the judge states the only question for the jury in the same language as he used in the commencement of his charge—"Was it an unavoidable accident?"—we must conclude that we have placed the proper construction upon the charge.

Again we think the Circuit Judge was in error in saying to the jury that the stock law had nothing to do with the case. While it is quite true that the law does not operate as a license to railroad companies to kill stock or cattle straying upon their tracks passing through enclosed lands, and does not exempt them from liability for negligently killing such animals ; yet, for the very good reason suggested in the case of Simkins, *supra*, it is an element to be taken into account in considering the question of negligence ; for, as the Chief Justice well says in that case, "negligence is a relative term, and its existence in a given case depends upon the requirements of the occasion." Hence he says : "In those counties in the State where the stock law has not become the law, and where cattle are at liberty to roam at large upon railroad tracks and elsewhere at will for a train of cars to dash forward, without the precaution which should be observed in such cases, might be negligent ; whereas the same train, going at the same speed, and without the same precaution, in the counties where the stock law has been adopted, and where the railroad employees had no thought that cattle would be found on the track, would not be a negligent act." This is for the very obvious reason that while prudent persons do not ordinarily take precautions against improbable or extraordinary contingencies, they do usually undertake to provide against probable or ordinary risks. Hence, when a railroad train is being run through unenclosed lands where the stock law prevails, inasmuch as the officers in charge of the train have no reason to suppose that cattle or stock will be found upon the track, they are not expected or required to take the same precautions, or to exercise the same degree of care to avoid running over animals on the track as they would be when running through a county where the stock law does not prevail, and where they would have reason to expect to find cattle on the track.

Of course, under the rule, as laid down by the Circuit Judge,

as to the degree of care exacted of a railroad company in a case like the present, the stock law would not apply. For, if extraordinary care is required, and the highest possible diligence is to be exacted, so that the company should be held liable, unless the disaster was shown to be the result of an unavoidable accident, then the stock law would have no application to the case; and this furnishes an additional reason for supposing that the Circuit Judge did lay down the rule, as to the degree of care required, in the manner which we have hereinbefore indicated.

So, too, we think it was error to instruct the jury that there was another question for them to consider—"Was that culvert in good order?"—when they were at the same time told: "There is no proof about it one way or the other," and when, so far as we can discover, there was not a particle of testimony as to the condition of the culvert prior to the accident. We do not see how the jury could properly consider a question as to which there was no testimony whatever.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.