## THOMPSON v. BEARDEN, SHERIFF

(21 S. E. (2d), 189)

520

No-vember, 1941.

*Mr. W. A. Bull,* of Greenville, Counsel for Appellant,

Mr. Wilton H. Earle, of Greenville, appeared for Respondent.

July 7, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE:

The plaintiff brought this action in claim and delivery against R. Homer Bearden, as sheriff of Greenville County, to recover the possession of approximately 444 pints, 131 half pints, and 12 quarts of tax paid liquor. The liquor was seized by the sheriff's deputies on June 19, 1941, at a place in Greenville County near the North Carolina line, called Chestnut Springs, where was operated the business known

as Charlie Thompson's Tourist Cabins, this being the name of the plaintiff. It is alleged that the possession of this whiskey by the sheriff is unlawful, without authority, and in violation of the rights of the plaintiff.

The case was tried in the County Court of Greenville County, and resulted in a verdict and judgment for the defendant. The County Court denied motions made by the plaintiff for a directed verdict and for a new trial, and from this judgment the appeal is taken.

The issue to be determined is whether there was any evidence to show that the tax-paid whiskey seized by the sheriff was in "a place of business" as defined by Section 15 of Act No. 199, 41 St. at Large, pages 303-307. The pertinent provisions of this section read as follows: "It shall be unlawful for any person, firm or corporation to store or have in possession in his, her, or its place of business other than a licensed liquor store, any alcoholic liquors whatsoever. A place of business shall be, and include, any place where goods, wares, or merchandise are sold or offered for sale, or distributed, and also places of amusement. A place of business shall also include residences and transportation vehicles when sale of any merchandise is made therefrom. A place of business shall also include outbuildings, warehouses and garages, when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, or offered for sale, or distributed therefrom; Provided further, that all alcoholic liquor found in places of business, as above defined, is hereby declared to be contraband and shall be subject to seizure, confiscation and sale, as is provided in Section 17 of this Act * * *."

It appears from the evidence that the plaintiff is the owner of about thirty acres of land on the right-hand side of the highway leading from Greenville to Hendersonville, upon which are located adjacent to the highway a cafe and kitchen and two connected dance halls frequented by the public. Just opposite these buildings on the other side of the highway, the plaintiff owns a tract of land upon which are located five

cabins. These cabins on the left-hand side of the road are, according to the testimony for the defense, about 75 yards from the dance halls and cafe. The testimony for the plaintiff places them at a greater distance. The liquor in question was seized by the sheriff's deputies in two of the cabins, one of which was occupied by the mother-in-law of the plaintiff, and the other occupied by the plaintiff himself.

There is no testimony that any goods, wares or merchandise were actually sold from these cabins. The real issue before the Court is whether it may reasonably be inferred from the evidence that these cabins were used in connection with the cafe and dance halls operated across the road so as to come within that portion of the 1939 Act which provides: "A place of business shall also include outbuildings, warehouses and garages, when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, or offered for sale, or distributed therefrom   *   *   *:"

It is admitted that in the dance halls and cafe, beer, wine, cigarettes, soft drinks and sandwiches were sold.

The officers made the seizure in the afternoon of June 19th, and found in the cabin occupied by the plaintiff's mother-in-law about seventeen cases of liquor of various brands and classes. They discovered that all of the cases except about five had been opened and that five or six bottles of whiskey had been removed from each of the opened cases. They found cases of whiskey stored all over the room: some on the floor at the foot of the bed, much of it on top of the bed, and other cases beneath the bed.

When the sheriff's deputies arrived at the dance hall they saw four men seated within and apparently waiting to be served. One of the officers secreted himself behind a corner of the building and saw the plaintiff's married daughter, who apparently worked in the cafe, walk from the dance hall across the road to the cabin of the plaintiff's mother-in-law where the great bulk of the liquor was found. She immediately returned to the dance hall from this cabin with a

pint of whiskey in her hand, "kinder locked up under her arm." The officer asked her what she intended doing with it. She replied, "What do you think I am going to do with it?" In the kitchen connected with the cafe the officers found fruit jars, empty whiskey bottles, a quart bottle with about two drinks in it, and a half pint of whiskey sitting on the table.

The plaintiff testified that he had nothing to do with the conduct and operation of the business operated on the right-hand side of the road,—that is, the cafe and the dance halls. He said that this business was carried on by his wife; he also stated, "I stay there and help my wife." The evidence shows that sometimes he and his wife slept in the kitchen connected with the cafe, and sometimes across the road in a garage which he had converted into a garage apartment.

The plaintiff, who was not at the tourist cabins when the liquor was seized, went to the sheriff's office the following morning where he found the Sheriff and one of the seizing deputies, Mr. Frank Mahon. It appears that the plaintiff and Mahon had worked together in a cotton mill, and the plaintiff is quoted as making this statement to the sheriff: "Me and Frank here are old lint heads; if you will give us our liquor back, I will quit selling it and we will be good friends right on * * *; I am taking that to North Carolina and getting a dollar and a half a case for it in dry counties."

The appellant lays great stress upon that portion of his testimony in which he stated that his wife operated the cafe and dance halls, and that he had nothing to do with that business. It is urged that this testimony should have been accepted by the trial Court as true in passing upon the motion for a directed verdict and the motion for a new trial. The wife of the plaintiff did not testify, nor were any other witnesses offered by him in support of his cause of action. The fact, however, that the plaintiff's testimony along this line was not contradicted by any positive testimony would not necessarily render his testimony indisputable nor place the stamp of verity upon it.

The truth or falsity of his statements, together with the legitimate and reasonable inferences to be drawn from all of the evidence, was properly submitted by the trial Judge to the jury.

In *Green v. Greenville County,* 176 S. C., 433, 180 S. E., 471, 473, we quoted with approval the general rule expressed in 26 R. C. L., at page 1069: "* * * The fact that evidence is not contradicted by direct evidence does not render it undisputed, as there still remains the question of its inherent probability and the credibility of the witness or his interest in the result. To justify a Court in instructing a jury that a witness has told the truth, and in directing a verdict based on the truthfuness of his evidence, there must be nothing in the circumstances or surroundings tending to impeach the witness or to throw discredit on his statements. If there is anything tending to create distrust in his truthfulness, the question must be left to the jury." And see the many South Carolina cases cited in support of the text in *Green v. Greenville County, supra.*

We do not think that it can fairly be said that the verdict of the jury was based upon mere conjecture, surmise, or suspicion. All of the facts and circumstances considered as a whole, together with the reasonable inferences to be drawn therefrom, made an issue of fact for the jury.

In our view, it might reasonably be inferred. that the cabins occupied by the plaintiff and his mother-in-law constituted and took on the character of a warehouse. It may be inferred from the evidence that they were used jointly as a store house for iquor. Whether they were so used in connection with the conduct and operation of the business across the road which was run as a cafe and dance hall, was properly submitted to the jury for its determination.

The only other question presented by the appeal is whether the Court erred in admitting testimony as to the carrying of tax-paid whiskey to North Carolina to be there sold by the plaintiff.

Over objection, it was brought out on cross examination of the plaintiff that he transported from South Carolina into North Carolina, and there sold, about fifty cases of liquor every week in dry counties. The plaintiff takes the position that this testimony was inadmissible, and is in conflict with the general rule which is to the effect that on a prosecution for a particular crime, evidence which shows or tends to show that the accused has committed another crime wholly independent of and unconnected with that for which he is on trial, is irrelevant.

This is a civil suit, and the burden of proof rested upon the plaintiff to establish by the greater weight of the evidence the unlawful character of the sheriff's possession. The defense was a general denial. We think the evidence objected to would be subject to the same rules of admissibility as in a criminal case, such as *State v. Shumpert,* 195 S. C., 387, 11 S. E. (2d), 523, 527, where we pointed out the exceptions to the general rule. In that case, which likewise involved a construction of Section 15, Acts 1939, page 307, we said: "Such evidence is relevant to show intent, motive, knowledge, design or plan, and as showing circumstances corroborative of the evidence relating to the transaction charged in the accusation upon which the defendant is being tried."

In the same case it was stated: "The rule excluding evidence that accused committed other offenses is subject to a number of exceptions and limitations, as where such evidence tends directly or fairly to prove his guilt of the crime charged, or to connect him with it, or to rebut the defensive theory or a special defense, or to establish the absence of mistake or accident, or where the crime charged and the other offense are closely related or connected; and evidence otherwise competent to establish accused's guilt of the crime charged is not inadmissible because it incidentally tends to prove him guilty of another crime. 22 C. J. S., Criminal Law, § 683, p. 1089; *State v. Gregory;* 191 S. C., 212, 4 S. E.

(2d), 1; *State v. Lyle,* 125 S. C., 406, 118 S. E., 803, 807; 20 Am. Jur., § 310, p. 289."

In our opinion, the testimony objected to has a bearing on the plaintiff's course of conduct and is logically pertinent, together with other evidence, as tending to link him with the unlawful possession of liquor in an outbuilding, warehouse or garage which was connected with the operation of the cafe and dance hall where goods, wares and merchandise were sold. It may be inferred from the circumstances under which the liquors were kept, that the plaintiff, who was not a licensed liquor dealer, was prepared and equipped to engage in the general sale of liquor, and used his cabins as a central depot or distributing center for his business in this State and in North Carolina. We think that the testimony to which objection was made was relevant to the general issue.

In our opinion, the evidence was sufficient to carry the case to the jury, and justified the trial Judge in overruling the motion for directed verdict and the motion for a new trial.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MR. ASSOCIATE JUSTICE STUKES, and CIRCUIT JUDGES A. L. GASTON and L. D. LIDE, ACTING ASSOCIATE JUSTICES, concur.