16375

JOHNSON v. ATLANTIC COAST LINE R. Co.
(60 S. E. (2d) 226)

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

*Messrs. Samuel Want, Sam Rogol* and *LeRoy M. Want,* all of Darlington, *for respondent,*

192

*Messrs. Paulling & James,* of Darlington, *for Appellant,*

June 26, 1950.

OXNER, Justice.

This action was brought to recover the sum of $80.00, the value of two calves which respondent alleged were killed by the negligent operation of one of appellant's trains. Appellant entered a general denial except as to the formal allegations of the complaint. The case was tried before a magistrate and jury. At the conclusion of the evidence, the magistrate directed a verdict for appellant upon the ground that the presumption of negligence arising from the killing of the calves was completely rebutted by the uncontradicted testimony of the employees of the railroad company. On appeal by respondent to the Circuit Court, it was held that the magistrate erred in directing a verdict and that the question of negligence should have been submitted to the jury. The Circuit Judge, while conceding that "there was no direct evidence of negligence" on the part of appellant, concluded that the presumption of negligence arising from the proof of the fact that the calves were killed by the train should be given the force of evidence to be weighed against the testimony of the railroad employees. On this appeal by the railroad company from the order of the Circuit Judge granting a new trial, it is contended that there was no evidence of negligence to be submitted to the jury and that the view adopted by the Circuit Judge contravenes the constitutional guaranty of due process and equal protection of the laws.

It is admitted that the calves belonging to respondent were struck and killed by a freight train of appellant about 11:30 A. M. in December, 1948. Respondent, who lives near the right of way, testified that these calves were left in his pasture and by some means unknown to him escaped and were killed by one of appellant's trains. He relied on a presumption of negligence from this fact. The only eyewitnesses were the engineer and fireman who testified for appellant. There is no material conflict in their testimony, which was substantially to the following effect:

The train consisted of 25 or 30 freight cars and was traveling about 25 miles an hour on a level track. It was a clear day. The calves were first seen when about 300 feet ahead of the engine which had just rounded a curve. They were then "coming up the side of an embankment" on the left side of the track and could not have been observed earlier because "they were back behind the fill." The area on the left side of the track was wooded. As soon as the calves were seen, the engineer "immediately put on the emergency brake and blew the whistle and had the steamcocks opened to make a noise, but they (calves) came right on in front of the engine." When the engine was about 100 feet away, the calves got in the middle of the track and started running. After striking them, the train traveled a distance of approximately 300 feet. The engineer and fireman stated that this train could not have been stopped in less than about 800 feet and that they did everything possible to avoid injuring the cattle.

The foregoing testimony of the engineer and fireman was all that was offered on the issue of negligence. No reply testimony was offered by respondent.

The applicable rule to a case of this kind was first established in this state in *Danner v. South Carolina Railroad Co.*, 4 Rich. 329, 55 Am. Dec. 678, decided in 1851. It was there held that although the burden of showing negligence on the part of the railroad company is upon the plaintiff, where he proves that his cattle were killed by a railroad train, he makes out a *prima facie* case of negligence and the burden of going forward with the evidence and making a satisfactory explanation rests upon the railroad company. In that case the railroad company offered no evidence and gave no explanation. The rule was adopted from necessity because ordinarily the circumstances surrounding the destruction of the cattle are only known to the railroad employees. Very few courts in other jurisdictions have adopted or followed this rule. However, in a number

of states statutes have been enacted making proof of an injury to an animal by a railroad train *prima facie* evidence of negligence and placing the burden upon the railroad to rebut the presumption of negligence. It was not long before the soundness of the rule in *Danner's case* was vigorously challenged by the railroads and on numerous occasions they have sought to have that case overruled. This Court has consistently refused to do so and the rule has remained in effect for a period of approximately a hundred years. In *Jones v. Columbia & Greenville R. Co.,* 20 S. C. 249, it was held that the rule in *Danner's case* was not abrogated by the enactment in South Carolina of the "stock law" requiring the landowner to fence in his cattle, although it was stated in *Molair v. Port Royal & A. Railway Co.,* 29 S. C. 152, 7 S. E. 60, 64, that the existence of the stock law "is an element to be taken into account in considering the question of negligence."

The rule in *Danner's case* seems to have been regarded in the nature of a rule of evidence until the decision of the Court in *Joyner v. South Carolina R. Co.,* 26 S. C. 49, 1 S. E. 52, 55. The Court was there called upon to determine the weight to be attached to the presumption where the railroad company offered evidence tending to show an absence of negligence. A majority of the Court concluded that the presumption is not confined to cases where the defendant offered no evidence or made no explanation but "remains of controlling force until the defendant's evidence overthrows it by showing either due care, unavoidable accident, or something of that kind." It was there held that the presumption should be regarded as evidence to be weighed against any evidence of due care offered by the railroad company. Justice McIver filed a vigorous dissent in which, after stating that the mere fact that cattle were killed by a railroad train does not reasonably warrant an inference of negligence, he said: "The true view of the matter is that the artificial rule of evidence, established by *Danner's case,* can only be available in the absence of testimony derived from the usual sources; but, where

such testimony is adduced, then the jury must draw their conclusions *from that testimony,* as in all other cases."

It is apparent that the rule originally adopted in *Danner's case* was materially enlarged and extended by a majority of the Court in the *Joyner case.* Since the latter decision, however, it has uniformly been held that the presumption of negligence arising from proof of the cattle being killed by the railroad train is evidence to be weighed by the jury against unimpeached, positive testimony of the railroad employees showing due care and that the accident was unavoidable. *Ritter v. Atlantic Coast Line R. Co.,* 83 S. C. 213, 65 S. E. 175; *McLeod v. Atlantic Coast Line Railroad Co.,* 93 S. C. 71, 76 S. E. 19, 705; *Perryman v. Charleston & W. C. Railway Co.,* 105 S. C. 34, 89 S. E. 497; *Ervin v. Atlantic Coast Line R. Co.,* 106 S. C. 354, 91 S. E. 317. In *Moorer v. Atlantic Coast Line R. Co.,* 103 S. C. 280, 88 S. E. 15, it was held that the presumption of negligence established by these cases did not constitute a denial of due process of law.

*McLeod v. Atlantic Coast Line Railway Co., supra,* involved an action to recover the value of a mule killed by one of defendant's trains. The plaintiff relied entirely upon the presumption of negligence arising from the fact that the mule was killed. To rebut this presumption, the defendant introduced the testimony of the engineer of the train to the effect that the train was running at a regular speed, and that the mule came on the track from behind a hedge or embankment so suddenly that it was impossible to stop the train before striking him. The defendant contended that its evidence so conclusively rebutted the presumption of negligence that no other reasonable inference could be drawn than that it exercised due care. The Court held that the issue of negligence was properly submitted to the jury. It was pointed out that the testimony as to due care came from the engineer, an employee of the defendant, to whom the negligence, if any, would be chargeable, and it was said that the interest of this witness was such that the credibility of his testimony should be sub-

mitted to the jury. In denying a petition for a rehearing, the Court said: "A plaintiff, whose stock has been killed by a railroad train, has the right to have the jury consider the force of the presumption in his favor, as testimony against the account of the accident given by the railroad employee. It was to protect him from being absolutely bound by the testimony of the railroad employees that the rule as to the presumption of the negligence was adopted."

It must be conceded that the order of the trial Judge is fully sustained by *McLeod v. Atlantic Coast Line R. Co.,* *supra,* and other like cases. Appellant has sought and been granted permission to argue against the *McLeod case.* It is said that this case is inconsistent with the decision of the United States Supreme Court in *Western & Atlantic R. R. v. Henderson et al.,* 279 U. S. 639, 49 S. Ct. 445, 446, 73 L. Ed. 884.

"The federal guaranty of due process extends to state action through its judicial as well as through its legislative, executive, or administrative branch of government." *Brink-erhoff-Faris Trust & Savings Co. v. Hill,* 281 U. S. 673, 50 S. Ct. 451, 454, 74 L. Ed. 1107. We are satisfied that the rule as promulgated in *Danner's case* does not contravene the constitutional guaranty of due process. It was established as a rule of evidence and was founded upon necessity. As previously stated, many states have enacted statutes to the same effect which have been consistently sustained against the contention that they constituted a denial of due process of law guaranteed by the Fourteenth Amendment of the Constitution. But after mature consideration, we cannot escape the conclusion that the subsequent decisions of this Court to the effect that the presumption of negligence established in *Danner's case* should be given the effect of evidence to be weighed against unconflicting and uncontradicted testimony on the part of the defendant showing an absence of negligence are in conflict with the decision of the United States Supreme Court in *Western & Atlantic Rail-*

*road v. Henderson, supra.* The *Henderson case* involved a Georgia statute which provided: "A railroad company shall be liable for any damages done to persons, stock, or other property by the running of the locomotives, or cars, * * * unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company." Civ. Code 1910, § 2780. An action was brought to recover damages for the wrongful death of a person killed at a grade crossing as a result of a collision between a motor vehicle which he was driving and one of defendant's trains. The statute above mentioned was construed by the Georgia courts as creating "an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate." The United States Supreme Court held that the presumption raised by the statute was unreasonable and arbitrary and violated the due process clause of the Fourteenth Amendment. In reaching this conclusion, the Court observed: "The mere fact of collision between a railway train and a vehicle at a highway grade crossing furnishes no basis for any inference as to whether the accident was caused by negligence of the railway company, or of the traveler on the highway, or of both, or without fault of anyone. Reasoning does not lead from the occurrence back to its cause."

Following the decision in the *Henderson case,* the Court of Appeals of Georgia in *Louisville & Nashville Ry. Co. v. Campbell,* 40 Ga. App. 130, 148 S. E. 920, held in an action brought to recover damages for the killing of a dog that the presumption raised by the Georgia statute was void. Even prior to the Henderson decision the courts of Georgia held in actions to recover the value of cattle or livestock killed by the railroad, that the unimpeached testimony of the railway employees could not arbitrarily be disregarded and where the presumption of negligence under the statute was rebutted by uncontradicted evidence introduced by the railroad to the effect that its servants were without fault, a ver-

dict for the plaintiff could not stand. *Seaboard Air-Line Railway Co. v. Walthour,* 117 Ga. 427, 43 S. E. 720; *Georgia Railroad v. Henderson,* 31 Ga. App. 278, 120 S. E. 638. Also, see the more recent case of *Savannah & Atlanta Railway Co. v. DeBusk,* 68 Ga. App. 529, 23 S. E. (2d) 529.

Arkansas has a statute to the effect that where an injury is caused by the operation of a railway train, a *prima facie* case of negligence is made against the railroad and a presumption arises that the railroad is guilty of negligence in the operation of the train. Crawford & Moses Dig. § 8562. The Supreme Court of Arkansas in *St. Louis-San Francisco Railway Co. v. Cole,* 181 Ark. 780, 27 S. W. (2d) 992, 993, after referring to the *Henderson case,* construed this statute as follows: "The presumption of negligence is at an end when the railroad company introduces evidence to contradict it, and the presumption cannot be considered with the other evidence, because to do this would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary and would violate the due process clause of the Fourteenth Amendment. Therefore, in determining whether the evidence in this case is legally sufficient to support the verdict, we cannot consider the presumption created by the statute, but must determine the question from the evidence introduced." A similar statute in North Dakota was given the same construction by the Supreme Court of that state in *Snyder v. Northern Pacific Railway Company,* 69 N. Dak. 266, 285 N. W. 450.

There is no rational basis for the view that in every case where livestock or cattle are killed or injured by cars or locomotives along a railroad, the case must be submitted to the jury, no matter how conclusively the defendant may be able to establish a lack of negligence. The mere fact that cattle are killed by a railroad train does not logically support an inference of negligence on the part of the servants of the railroad. It is not unreasonable, however, to place

the burden on the railroad of accounting for the loss. The facts are usually peculiarly within the knowledge of its servants. This must be done from necessity in order to promote the administration of justice. There are many instances where the burden of going forward with the evidence is shifted during a trial. The rule does not prevent the railroad company from absolving itself of liability by showing that it was without fault. But when a full disclosure of the circumstances is made by clear, credible, and uncontradicted evidence, warranting only the inference of ordinary care, any verdict against the railroad based solely on the presumption of negligence is arbitrary and without evidentiary support. A jury should not be permitted to render a verdict based solely on conjecture. It does not follow from this conclusion that the presumption of negligence always disappears upon the introduction by the defendant of "some" evidence. An able discussion of this phase of the matter will be found in a decision by the Supreme Court of Wyoming in *Hildebrand v. Chicago, B. & Q. Railroad Co.,* 45 Wyo. 175, 17 P. (2d) 651, where the decision of the United States Supreme Court in the *Henderson case* is discussed and reviewed at length. The degree of care shown may be insufficient. The railroad company may not make a full disclosure of the circumstances, warranting an inference of negligence from the failure to produce material testimony peculiarly within its knowledge. The testimony introduced by the defendant on the issue of negligence may be conflicting or at variance with the physical facts, or it may be subject to more than one reasonable inference as to the exercise of ordinary care. Under these circumstances, and perhaps others that could be mentioned, it is proper to submit the question of negligence to the jury.

A similar view has been adopted by this Court with reference to various other presumptions. There is a presumption against suicide and in an action on a life policy, the beneficiary need not prove more than the insurance contract and the death of insured in order to establish a *prima facie* case

and up to that point can rely on the presumption against suicide, but it has been held that a directed verdict for the insurer is proper where the only reasonable inference to be drawn from the testimony is that the insured intentionally took his own life. *McMillan v. General American Life Insurance Co.,* 194 S. C. 146, 9 S. E. (2d) 562. Another illustration may be found in actions by a bailor to recover for the loss of bailed property or damage to same. When the bailor shows that the property has not been returned or that it has been returned in a damaged condition, he makes out a *prima facie* case, and the burden is then shifted to the bailee of showing that he used ordinary care in the handling and keeping of the property. It is his duty to disclose the facts and circumstances surrounding the loss or damage. But it has been held that where the testimony offered by the bailee warrants only an inference of the exercise of ordinary care, it is proper to direct a verdict in his behalf. *Kelley v. Capital Motors, Inc.,* 204 S. C. 304, 28 S. E. (2d) 836.

Our attention is called to a line of cases holding that the fact that the evidence is not contradicted does not have the effect of making it undisputed, as there still remains the question of the credibility of the witnesses or their interest in the result, which considerations are said to be peculiarly within the province of the jury. *Ingram v. Davis,* 131 S. C. 326, 125 S. E. 920; *Green v. Greenville County,* 176 S. C. 433, 180 S. E. 471; *Thompson v. Bearden, Sheriff,* 200 S. C. 519, 21 S. E. (2d) 189. Ordinarily this is true but for the reasons heretofore stated, the principle mentioned does not apply to the case before us. Where a full disclosure of surrounding facts and circumstances is made by the railroad, the presumption in *Danner's case* cannot be weighed as evidence against unimpeached and uncontradicted testimony of the railroad employees showing an absence of negligence. It must not be overlooked that the burden of establishing negligence in a case of this kind rests throughout the case on the plaintiff. When a *prima facie* case is made out, the burden that shifts to the railroad is only that of going for-

ward with the evidence and showing that due care was exercised.

Finally, it is argued that the rule in *Danner's case* denies to railroad companies the equal protection of the law guaranteed by the Fourteenth Amendment of the Federal Constitution. This contention is largely based on our decision in *Turner v. Elrod,* 151 S. C. 131, 148 S. E. 701, where it was held that the rule in *Danner's case* was not applicable to a motorist who killed a mule on a public highway. We doubt if this distinction has the effect of denying to railroads the equal protection of the laws. See *Seaboard Air-Line Railway Co. v. Watson,* 287 U. S. 86, 53 S. Ct. 32, 77 L. Ed. 180, 86 A. L. R. 174. In view of the conclusion we have reached, however, we find it unnecessary and do not undertake to determine the question.

The case of *McLeod v. Atlantic Coast Line R. Co., supra,* 93 S. C. 71, 76 S. E. 19, 705, and other cases of similar import must be considered as modified in accordance with the views expressed in this opinion.

In the instant case the appellant produced as witnesses the engineer and fireman who were the only eyewitnesses to the accident and who alone had any knowledge of the circumstances. Their testimony is clear and undisputed. The only reasonable inference warranted by this testimony is that the servants of appellant exercised due care and took every precaution to avoid killing these calves. There are no physical facts or other circumstances tending to contradict this testimony. It follows under the views herein announced that the respondent has failed to establish negligence.

The order appealed from is reversed and the case is remanded for the entry of judgment in favor of appellant.

BAKER, C. J., and FISHBURNE and TAYLOR, JJ., concur.

STUKES, J., dissents.

STUKES, Justice (dissenting).

I am not convinced that the long-settled law of South Carolina on this subject should be overturned. Nor do I think that the case of *Western & Atlantic R. R. v. Henderson et al.*, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, requires it. There involved was the conduct of a responsible human being, not a dumb animal.

The distinction was pointed out in *Wilson v. Southern Ry.*, 93 S. C. 17, 75 S. E. 1014, 1016, where an animal was referred to as "a brute which has no guide but mere instinct"; and again in *Moorer v. Atlantic Coast Line R. Co.*, 103 S. C. 280, 88 S. E. 15, 16, in which it was said by Mr. Justice Gage who spoke for the court: "The horse, the cow, and the mule are incapable of care; there is no duty on them to stop and look and listen; their way of escape might turn out to be the way of peril; like dead men, they tell no tales."

It is interesting to note that the *Henderson case, supra,* was not followed by the Supreme Court in *Atlantic Coast Line R. Co. v. Ford,* 287 U. S. 502, 53 S. Ct. 249, 77 L. Ed. 457, which affirmed *Ford v. Atlantic Coast Line R. Co.,* 169 S. C. 41, 168 S. E. 143, and upheld our railroad crossing statute as applied by this court.